## City of Jacksonville v. Headen.

1 *Judgment Erroneous—Amendment at a Subsequent Term of Court —Practice—Additional Record.*—A judgment was entered against the city of Jacksonville for costs in a suit for a violation of an ordinance. Pending an appeal, at a subsequent term of the Circuit Court the cause was redocketed, and on motion of the defendant, an order was made amending the judgment by striking out so much of the record as related to costs; then an additional record was filed in the Appellate Court showing the motion, the hearing by the court of the arguments of counsel, the rulings allowing the motion, etc., to which rulings the plaintiff then and there excepted, etc. It was held that the amendment was proper.

2. *Disorderly Conduct.*—It is not the law that any threatening or insulting word, gesture or motion amounts to disorderly conduct. It may be of such a character or so provoked or conditioned as to be fully justified.

3. *Disorderly Conduct—What is, etc.*—A farmer who resided in Morgan county more than half a century, and notwithstanding some habits not to be commended, was upon the whole a respectable man and good citizen, went to Jacksonville, where he took one drink of whisky and two glasses of beer, was a little loud in a political discussion and swore some about the tariff, but according to the great preponderance of the evidence, he was not intoxicated, used no obscene language, and showed no disposition to harm anybody. *It is held,* that the verdict of jury finding that he was not guilty of violating an ordinance of the city against conducting himself in a disorderly manner would not be disturbed.

**Memorandum.**—Action for a violation of a city ordinance. Appeal from a judgment for the defendant rendered by the Circuit Court of Morgan County, the Hon. CYRUS EPLER, Circuit Judge, presiding. Heard in this court at the May term, 1891, and affirmed. Opinion filed October 24, 1892.

### APPELLANT'S STATEMENT OF THE CASE.

Thomas C. Headen was arrested on August 9, 1890, without a warrant, by a police officer of the city of Jacksonville, who lodged against him three charges, namely: drunkenness, disorderly conduct, and obscene and profane language, tending to disturb the peace. On the trial of the case before a justice of the peace, he was found guilty of each offense charged, and was fined $9, with costs of suit. In the Circuit Court the cause was tried before a jury,

City of Jacksonville v. Headen.

on appeal, and the defendant, Headen, was acquitted, and judgment rendered for the defendant against the city in bar and for costs.

At the following term of the Circuit Court, on motion of the defendant, the cause was re-docketed and an order made amending that record by striking out that part of the judgment relating to costs.

## APPELLANT'S BRIEF.

For the city, we contend that drunkenness is provable by opinion.

"The opinion of an ordinary witness as to whether a certain person was sober or intoxicated is admissible." Lawson on Expert and Opinion Evidence, page 473, sub-rule 3. "Whether a person is nervous, or excited, or calm, or whether drunk or sober, are facts patent to the observation of all, and their comprehension requires no peculiar scientific knowledge." Dimmick v. Downs, 82 Ill. 570, 572.

On a trial for murder, a witness testified that he saw the defendant at the time of the killing. He was then asked: "From his conduct and deportment, and other facts connected with it, state whether, in your judgment, he was to any considerable extent under the influence of intoxicating liquors." His answer was excluded. *Held*, error. People v. Eastwood, 14 N. Y. 562; Lawson, Expert Evidence, page 475.

"Whether a person is drunk or sober, or how far he was affected by intoxication, is better determined by the direct answer of those who have seen him than by their description of his conduct." People v. Eastwood, 14 N. Y. 562.

"A witness may state whether or not a person had the appearance of being intoxicated, and such a statement of appearance would be the statement of a fact. Facts which are latent in themselves, and only discoverable by way of appearance more or less symptomatic of the existence of the main fact, may, from their very nature, be shown by the opinions of witnesses as to the existence of such appearance or symptoms. Sanity, intoxication, the state of health or

of the affections, are facts of this character. 1 Greenleaf, Evidence, Sec. 440a." City of Aurora v. Hillman, 90 Ill. 61, 66.

RICHARD YATES and FRED. H. ROWE, attorneys for appellant.

### APPELLEE'S BRIEF.

Sec. 40 of Chapter 53 of the Revised Statutes, quoted and referred to in Town of Nokomis v. Harkey, 31 App. Ct. Rep., p. 107, does not in terms apply to courts of record. That section, as amended by the laws of 1873 (see Session Laws 1873, page 93, same as Session Laws 1871–2, p. 420), applies only to justices of the peace and constables.

OSCAR A. DELEUW and F. D. McAVOY, attorneys for appellee.

OPINION OF THE COURT, *the Hon. George W. Pleasants, Judge.*

Appellee was arrested without warrant by a police officer of the city, who lodged charges against him for violation of the ordinances in three particulars, namely (1), being found in a state of intoxication in a public place in said city; (2) using obscene language in such manner as to disturb the peace and quiet of the neighborhood or of those passing through the streets; and (3) conducting himself in a disorderly manner in a public place in said city. From the judgment of the justice of the peace an appeal was taken to the Circuit Court, and on trial by jury the defendant was acquitted, a motion for a new trial overruled, and judgment entered against the plaintiff in bar and for the costs.

An additional record was filed in this court, from which it appears that at the following term of the Circuit Court, on motion of the defendant, the cause was there re-docketed and an order made amending the record by striking out so much of it as related to costs.

Appellant claims that the judgment was not amendable in that particular, on motion, at a subsequent term, and that

the additional record does not show any notice to plaintiff of the motion to amend.

The additional record shows the motion, the hearing by the court of the arguments of counsel thereon, and the rulings allowing the motion and ordering the amendment, and then proceeds as follows : " To which rulings and orders of the court the plaintiff then and there excepted and does still except. And plaintiff prays an appeal to the Appellate Court, which appeal is granted, and bill of exceptions to be signed in fourteen days by consent of parties." Then follows the certificate of the clerk that " the above and foregoing is a full, true and complete copy of the record in the case of The City of Jacksonville v. Thomas O. Headen (re-docketed) in said Circuit Court, at the May term, A. D. 1891, of said court." The " above and foregoing " does not include any appeal bond or bill of exceptions; and since the grounds on which the amendment was ordered do not appear, we must presume it was properly shown that the court at the preceding terms did not in fact adjudge costs against the city, and that the error in the record was clerical. Nor does it appear that any objection to the allowance of the motion was made on the ground that proper notice of it had not been given. It seems that counsel for the plaintiff was present and heard on the motion. We therefore hold the amendment proper.

On the issues of fact forty-four witnesses were examined, of whom thirty-seven were introduced by the defendant. There was evidence, and not a little, clearly tending to disprove each of the charges. In view of the character and amount of it, the alleged errors on the action of the court are deemed unimportant to consider at any length. It is not clear that the court did exclude the opinion of any witness, as opinion founded upon any proper basis on the question of defendant's intoxication. Mere guesses, from appearances which might as well be due to other and innocent causes, were not proper evidence. All of the facts from which a judgment that he was intoxicated could be formed were before the jury, and the suspicion or guess of a witness

who knew only such as of themselves were not a sufficient basis for an opinion could not aid them. Such was the case of Henderson. After stating the facts he observed, he was asked to state "whether or not the defendant was under the influence of liquor, and if so, to what extent," and answered, " I had not seen him drinking any and I could not say." He evidently understood that the appearances he had observed and stated might as well be due to other causes, and hence could form no admissible opinion as to what in fact caused them. The "opinion" of the witness, Woods, who was introduced by defendant, was objected to by plaintiff and excluded. These are the only instances mentioned in which the court so ruled. They must have been considered as exceptional, since in many others it was admitted. Counsel concedes that the preponderance of the evidence admitted on the question of defendant's intoxication was in his favor. They say the jury "should have acquitted as to drunkenness (and perhaps as to obscene language), but they should have convicted as to disorderly conduct." We think no evidence offered that was material, or might have led to a different finding upon those charges, was excluded.

It is said that in failing to convict of disorderly conduct the jury must have ignored the evidence for plaintiff, and that this may have been induced by the action of the court in its ruling upon instructions asked by plaintiff. Among these were three, alike in substance and form except as they applied respectively to the different charges, and the court gave those relating to intoxication and the use of obscene language, but refused that relating to disorderly conduct. The suggestion is that the court having thus called the attention of the jury to the two and ignored the third, it is not surprising that they also ignored it.

By the ninth instruction given for plaintiff as asked, and which immediately preceded the three referred to, the jury were told that the city was prosecuting for violations of the ordinances in three ways, stated as herein above set forth; and that even if the evidence may have failed to

City of Jacksonville v. Headen.

convict of some one, yet if it proved the defendant's guilt of the others or either of them it was the duty of the jury to find him guilty of the offense or offenses so proved and impose a fine or fines accordingly. The three following added to this a short statement of what would constitute the offense therein respectively mentioned, the limit of the fine for its commission and the form of a verdict of guilty. In the one refused the offense was defined as "any action or speech tending or calculated to produce or encourage violation or breach of public or municipal order," and declared that "if the evidence in this case shows that defendant, at or immediately before the time of his arrest, made use of insulting or threatening words, gestures or motions toward a police officer of said city, in a public place, this would constitute disorderly conduct."

It could not have been known to the jury that such an instruction or that any instruction relating to disorderly conduct had been asked and refused. Such refusal, therefore, could not have led them to infer that the court ignored that charge. It was expressly submitted to them in another with all the evidence offered upon it. This one may have been refused for the reason that the definition of the offense as applied to this case was too broad and absolute. We apprehend it is not the law that every threatening or insulting word, gesture or motion, even toward a policeman, amounts to disorderly conduct. It may be of such a character, or so provoked or conditioned as to be fully justified; and had the instruction been given with the qualification required by the evidence, we think the finding should have been as it was.

The disorderly conduct charged is said to have consisted in threatening and striking the officer. Only two of the witnesses said anything about his threatening. Henderson met Hughes and Estaque (another policeman) at the southwest corner of the square, and testified that while he was talking with them "the defendant came up, shaking his fist and making some threat—he didn't want him to follow him around." Vasconcellos says, "I was just passing and

saw Headen approach Hughes a number of times, two or three times anyway, shaking his fist at the policeman and making some threats. This drew my attention and I stopped to listen. Headen said he didn't care if Hughes was a policeman, he didn't want him to bother him, and he would settle him, fix him, and all such remarks as these. He seemed to be excited and spoke to him rather rough." That is the whole of the evidence on the subject of defendant's threats. Neither of these witnesses professed to give his words or any of them, nor did they know the circumstances which occasioned them. Hughes and Estaque knew them all and did profess to state his language, but neither of them intimated that he made any threat. The striking must have been done just before the other two came up, or they failed to notice it. There was no anger or intentional offense in it. Estaque says; "I think Hughes did not take it as a personal grievance." Hughes himself says they were friends; had been on the best of terms. These officers had met him only ten or fifteen minutes before at the northwest corner of the square. He had been drinking enough to be felt, had just come out of a saloon, and was talking politics somewhat loudly, as his manner was when on that subject. Estaque, who was near, talking with Hughes, presumed to rebuke him for an expression he used, which, though not nice, was neither profane nor obscene, and ordered him to be quiet. This provoked Headen, who spoke of it complainingly to Hughes, as Estaque turned and went away. Hughes advised him to the same effect, but in an entirely friendly manner, and also went away. When Headen again met him, ten or fifteen minutes later, his mind recurred to the incident. Hughes was talking with Mr. Glossop. Headen walked up to him, pushed him in the side, took hold of him, and began to swear about Estaque, the tariff and the republican party. That was the striking referred to. Evidently it was a liberty taken as a friend. Hughes did not understand it as intended to be offensive, though it was rough and disagreeable enough to be checked. And so he said : " Come, Headen, that is enough of that. You go on now

and behave yourself, or I shall have to arrest you." Glossop says that "Headen turned away laughing, and apparently good natured. But perceiving that the officer was serious, and nettled by the threat of arrest, in a few moments he went up to him once and again and with some warmth of manner told him to arrest him if he wanted to, and thereupon he was taken by Hughes and Estaque to police headquarters and the complaint was made."

Defendant was a farmer who had resided in the county fifty-four years, and, notwithstanding some habits which are common enough, though not to be commended, was, on the whole, a respectable man and good citizen. On the occasion in question he had taken one drink of whisky and two glasses of beer within two or three hours, and was a little loud in political discussion; but according to a great preponderance of the evidence he was not intoxicated, used no obscene language, and showed no disposition to harm anybody. We see nothing in his conduct of a criminal or *quasi* criminal character. The interference of the officers seems to have been ill judged, and the jury disposed of the case rightly. Judgment affirmed.