Gustav Oratowski and Tod Porterfield, Appellees, v. Civil Service Commission of City of Chicago et al., Appellants.

Gen. No. 46,280.

Opinion filed October 19, 1954. Released for publication January 4, 1955.

JOHN J. MORTIMER, Corporation Counsel of City of Chicago, for appellants; L. LOUIS KARTON, Head of Appeals and Review Division, and HARRY H. POLLACK, Assistant Corporation Counsel, both of Chicago, of counsel.

GROSSMAN & GROSSMAN, of Chicago, for certain appellee; LESTER N. GROSSMAN, and LOUIS N. GROSSMAN, both of Chicago, of counsel.

FRANCIS J. KENNEDY, and THOMAS A. McCAFFREY. both of Chicago, for certain other appellee.

MR. JUSTICE ROBSON delivered the opinion of the court.

Plaintiffs filed their action under the Administrative Review Act to reverse two orders of the Civil Service Commission of the City of Chicago. The actions were consolidated. The Commission had ordered the plaintiffs discharged from their positions as patrolmen in the Department of Police. The trial court reversed the Commission. This is an appeal by defendants from that order.

The Commission contends that the trial court erred in setting aside the findings of the Commission

because they were supported by a preponderance of the evidence. In construing the Administrative Review Act the findings of the hearing body must be supported by the evidence. *Drezner v. Civil Service Commission,* 398 Ill. 219; *State Public Utilities Commission ex rel. Chicago Board of Trade v. Toledo, St. L. & W. R. Co.,* 286 Ill. 582. The charges need only be proved by a preponderance of the evidence and need not be proved beyond a reasonable doubt. It is not within the province of a court to disturb the findings of fact made by the administrative agency unless manifestly against the weight of the evidence. *Drezner v. Civil Service Commission, supra.* The court does not have the right to reweigh the evidence in the cause appealed from nor to make its own independent determination of the facts. *Harrison v. Civil Service Commission,* 1 Ill.2d 137, 146; *Logan v. Civil Service Commission,* 3 Ill.2d 81, 87.

We must ascertain if the action of the trial court was proper. The record reveals that on August 1, 1952, the Commissioner of Police filed charges with the Commission against plaintiffs, charging them with conduct unbecoming police officers, using coarse, profane or insolent language to a citizen and willful maltreatment of a person in violation of the rules and regulations of the Department of Police. A hearing was held on the charges. Plaintiffs were present and represented by counsel. The Commission entered findings and decisions as to each plaintiff which were substantially the same. The Commission found,

"Koprowski, who returned to wait for his employer, stated to a third party that he had received a ticket and was thereupon interrupted by the respondent (Oratowski) who asked Koprowski if he thought that he, the respondent, (Oratowski) was ignorant, and Koprowski replied in the affirmative, at which point the respondent (Oratowski) told Koprowski he was under

arrest and so advised Porterfield who was standing nearby and thereupon the respondent (Oratowski) and Porterfield with considerable force pushed and shoved Koprowski into the front seat of such squad car and forced him down on his back and struck, hit, shoved and assaulted him, and Porterfield accompanied and abetted by the respondent (Oratowski) grabbed Koprowski by his hair and punched him in the stomach and struck him with his knee in the groin between Koprowski's legs causing him to cry out, and Porterfield grabbed a microphone off its hanger in the squad car and beat Koprowski over the head with it and otherwise beat and maltreated Koprowski and thereupon the respondent (Oratowski) and Porterfield, as the driver of such squad car, proceeded to take Koprowski to a police station in such car and en route to such station the respondent (Oratowski) gave Koprowski a further beating, striking and assaulting him about the head and body and choking him; . . ."

and that plaintiffs were,

"Guilty as charged herein and contrary to law and the rules and regulations of the said Department of Police, of conduct unbecoming a police officer or employee of the said Department . . . ."

The evidence upon which the Commission based these findings reveals that Casimir Koprowski, the party against whom the acts complained of were committed, was on June 30, 1952, driving an automobile for the Como Manufacturing Company. He stopped at Hollywood avenue near Broadway where the Broadway Buick Sales Company was located, to wait for the manager of his company, Carl Knippel. While stopped there he was given a ticket by plaintiff Oratowski for illegal parking. He then drove the car to another location, parked and returned to the Buick entrance to wait for Knippel. He stood there talking to one of the

554

Buick employees when Tyson Poppel, president of Buick, came out. He told Poppel about the parking ticket. Plaintiff Oratowski interrupted the conversation and Koprowski told him he was ignorant. Plaintiff Oratowski then told Koprowski he was under arrest. He asked on what charge and received no reply. Plaintiff Porterfield, who had been sitting in the squad car, came out and seized him, threw him on the seat of the squad car where he landed on his back, punched him in the stomach, pushed his knee in Koprowski's groin, hit him across the face with his policeman's hat, struck him across the nose, pushed his teeth and again struck him in the stomach. On the way to the station in the squad car plaintiff Oratowski pulled his head back, grabbed his ear, pushed him in the stomach, face and chest and choked him. This caused a bowel movement. Oratowski told him he was going to have a one-way ride. On the way to the station Oratowski told him, "Start running you yellow bastard." Thereafter he was taken to the station and booked. He said at no time did he resist the plaintiffs or give them cause to strike him. He only kept asking the reason for the arrest. As a result of the beatings Koprowski said he suffered a cut nose, cut lip, loose teeth, abrasions on his neck and back, and stomach injuries that required him to be on a liquid diet for two weeks.

A sergeant of the police at the station where Koprowski was taken testified he asked him to remove his shirt. He noticed three horizontal marks on the left side of his neck, an abrasion on his back but no discoloration above his waist. Koprowski told a man that was present in the station that he had been messed up in the arrest. The sergeant asked Koprowski if he wanted medical attention and he said no.

Joseph Moore, a chauffeur for a cab company, said he was walking on the sidewalk at Hollywood and

Broadway when he saw a police officer get out of his car and walk over to Koprowski, take him by the arms and say, "I will throw you into the squad car and take you into the station." He was about ten feet from them when it happened. The officer was plaintiff Oratowski. Koprowski told Oratowski, "You ain't throwing me in no squad car." Oratowski took Koprowski to the squad car but Koprowski did not bend down to get in and Oratowski turned around to the people who were standing there and said, "You can see he is resisting arrest." At that time the other policeman, Porterfield, who was driving the car came around from the back and grabbed Koprowski by the middle of the hair, kicked him between the legs with his knee and hit him in the stomach. Koprowski yelled and fell on the seat with his foot hanging out of the door of the car. Koprowski's feet were still sticking out. The officers finally got his feet in the squad car and drove away.

Leslie M. Williams, assistant manager of Buick Service Department, testified to substantially the same effect as Joseph Moore. Carl Knippel, manager of the company which employed Koprowski, also testified substantially the same as Moore to the events before the squad car drove away. He, in addition, stated that after the arrest he went to the station and bailed Koprowski out. While there he noticed that Koprowski's lips were swollen. Koprowski told him he was sick. He advised him to go to his doctor.

Dr. Ralph Pacini testified that about two o'clock that same day he examined Koprowski. He had wide spread contusion and abrasions about the scalp and face, especially around the eyes and nose. He had difficulty opening his eyes. He had tenderness around the right side of his jaw; tenderness and contusion about the chest with definite abrasions. There were three parallel bruises on the right side of his neck which could have been caused by fingers grasping the

neck; there was a generalized abdominal tenderness; there was tenderness in the genitalia; and there was evidence that his nose had been broken. He referred him to an ear, nose and throat specialist.

Tyson Poppel, president of the Broadway Buick Sales Company, testified that on the day in question one of his employees, Leslie Williams, told him that one of the plaintiffs wanted to give him the devil for towing away the car that had been in an accident. He told Williams to send the policeman to his office. Williams returned and said that the policeman wanted Poppel to come to him. Poppel refused to do this and sent Williams back with a message that the policeman should come to his office. About ten minutes later, a man by the name of Foreman, owner of the damaged car, asked Poppel to go out and see the police who were bothering him because his Buick car had been towed away. Poppel refused to do this but did go out to get the star numbers of the police. Their squad car was parked in a no-parking zone with a rear wheel on the curb. He heard Koprowski say to plaintiff Oratowski, "You gave me a ticket for parking incorrectly and here you are parked incorrectly." Oratowski asked him, "I am ignorant, am I?" Koprowski said, "Yes." Oratowski grabbed Koprowski by the collar and said, "We will take care of you." Koprowski threw up his hands and said, "You can't do that to me." Oratowski dragged him to the squad car. Plaintiff Porterfield came out of the squad car. The rest of Poppel's testimony was substantially the same as that of Joseph Moore.

David E. Meredith, a driver for Buick, testified that the plaintiffs came to Buick to investigate a car which had been in an accident and had been towed into Buick. Plaintiff Oratowski asked who had had the car towed in. He was told that Poppel had. Oratowski demanded that Poppel be brought to him. The witness Knippel drove into Buick. Koprowski came in and told Knippel

he was going to park. Koprowski parked and then Oratowski gave him a ticket. Koprowski told Meredith about the ticket. He saw plaintiffs' squad car parked in a no-parking zone. The rest of his testimony was substantially the same as that of Joseph Moore.

Richard Klingle, a salesman for Buick, Charles Abbott, custodian of a building across from Buick, and George Broll, a salesman for Buick, substantiated the testimony of Moore.

Plaintiff Porterfield testified that on the day in question he was assigned to traffic patrolman duty in the neighborhood of Hollywood and Broadway. He received orders to investigate an accident at Granville and Ashland avenues, involving a car owned by Mr. Foreman. He found that the car had been removed to the Broadway Buick garage. He and his partner, plaintiff Oratowski, drove to the garage and because of limited parking space turned around on Hollywood avenue and parked in front of a delivery truck standing just east of Broadway. Mr. Foreman was in the car with him and Oratowski. Oratowski and Foreman got out of the squad car. He started writing reports. He heard them talking to a man who said the car was on the second floor. Oratowski went to the second floor to examine the car and returned. He came over to the squad car and gave him information about the accident. He heard Oratowski ask someone what they wanted. That person replied, "I got your star numbers. I am going to take care of you." He put his report book down and heard Oratowski ask what the difficulty was, and ask "Are you threatening us?" Someone said, "You ignorant jerks; you can park your cars anywhere you want but I get a ticket for it." He didn't catch the full meaning but he heard the voice say, "I am not going any place. I tell you you can park any place you want to but you give us tickets for it." He looked out of the squad car and saw the man Oratowski was talk-

558

ing to was Koprowski. Oratowski said, "Cut out this noise." People were starting to gather around the squad car. Oratowski said, "I gave you a ticket; go ahead about your business before you get yourself locked up for creating a scene." Koprowski said, "You ain't going to lock up anybody." Oratowski then said, "If you feel that way about it, you are under arrest for disorderly conduct." He then got out of the squad car, walked behind it and came to the left side of Oratowski. He asked him if Koprowski was under arrest. Oratowski said he was. He reached for Koprowski's arm and said, "Come on fellow. You heard the officer. You are under arrest." Koprowski knocked his hand away. He then grabbed Koprowski's T-shirt and shoulder and turned him around and partially backed him into the squad car, a distance of four or five steps, told him he was under arrest, and to get in the squad car. Koprowski hollered he wanted his boss. He braced himself, had his shoulder against the door and kept yelling he couldn't be arrested. Porterfield continued to hold him by the arm with one hand. He pushed Koprowski in the stomach to make him bend over and shoved him in the squad car. Koprowski lay across the seat, locked his feet under the partially open door. Koprowski's arm seemed to come up and he didn't know whether Koprowski intended to hit him but Koprowski knocked his hat off. He unhooked Koprowski's feet and got him in the squad car. He got in, wiped the dirt off his hat and put it on his head. He started the squad car. He said he did not punch Koprowski at any time; did not push his knee in his groin; nor did he call him any names. They drove south on Broadway. After a short time Koprowski seemed to realize he was in a squad car and became very excited, raised his arm and struck Porterfield on the cheek. Oratowski put one arm around Koprowski's neck and held his other arm against Koprowski's

559

chest and told Koprowski to get ahold of himself. Ora-
towski requested the car to be stopped because he
thought Koprowski was going to be sick. The car was
stopped. Koprowski was very white and pale. Kop-
rowski was not threatened. He was called no vile
names. Koprowski was taken to the station and booked
for disorderly conduct or creating a scene. Porterfield
filled out the complaints.

The testimony of the other plaintiff, Gustav Oratow-
ski was substantially the same except that he described
the arrest of Koprowski for improper parking. He
said that later in front of the Buick Company a man
who said he was Smithson threatened him and then
Koprowski came up and said, "Look where you are
parked. You ignorant jerk. You give me a ticket for
parking and look where you are parked, you're all flat
foots." He told Koprowski to go about his business.
Koprowski refused to leave and after a few moments
of a lot of noise and trouble he again requested him to
leave. Koprowski refused. He then placed him under
arrest.

The Commission heard the evidence, saw the
witnesses and found that the plaintiffs should be dis-
charged as officers of the Department of Police of the
City of Chicago. The law vests in the Commission the
determination of the facts and the credibility of the
witnesses. While there were some variances in testi-
mony thirteen witnesses substantiated various parts
of Koprowski's version of what took place. Only the
two plaintiffs substantiated each other's story. Need-
less to say, there was a sharp conflict in the two ver-
sions.

Oratowski and Porterfield argue that the arrest of
Koprowski was in the line of their duty; that Koprow-
ski calling Oratowski ignorant was a sufficient ground
for his arrest; also that he was causing a disturbance
of the peace. It is not disputed that the officers were

parked in a no-parking zone. There is no showing in the record that it was impossible for them to park any place nearby where they would not be violating the law. Koprowski who had just been given a ticket for a similar offense saw this. He became indignant and made the remarks complained of.

██ An officer of the law must exercise the greatest degree of restraint in dealing with the public. He must not conceive that every threatening or insulting word, gesture, or motion amounts to disorderly conduct. It may be of such a character or so provoked or conditioned as to be fully justified. *City of Jacksonville v. Headen,* 48 Ill. App. 60; *Pinkerton v. Verberg,* 78 Mich. 573; *Heath v. Hagan,* 135 Iowa 495. A municipality has no authority to clothe any officer with autocratic power to order the summary arrest and incarceration of a citizen without warrant or process of law. If the municipality could, it would render the liberty of every one of its citizens subject to the arbitrary whim of a police officer. *People v. McGurn,* 341 Ill. 632, 638.

██ It is apparent from this statement of the law that words addressed to an officer in an insolent manner do not without any other overt act tend to breach the peace because it is the sworn duty and obligation of the officer not to breach the peace and beyond this to conduct himself so as to keep others from so doing. He has an obligation to exercise a great degree of restraint in dealing with the public and should not permit abusive statements to so arouse him that he will commit a breach of the peace. This Oratowski did not do. He allowed Koprowski's remarks to arouse his ire and made an arrest for a fancied insult which was not in violation of the law. The concurrence by Porterfield in the act makes him guilty of the same violation.

██ Section 20 of Rule 386 of the Rules and Regulations of the Department of Police of the City of

561

Chicago makes the willful maltreatment of a person an offense for which a police officer may be discharged. It is apparent from the testimony in the record that there was sufficient justification for the Commission's finding on this point. Under the principles of law that we stated at the beginning of our opinion, we conclude that the findings of the Commission were not against the manifest weight of the evidence. It was, therefore, not within the province of the trial court to disturb these findings. The judgment is reversed and the order of the Commission is affirmed.

*Judgment reversed and order of Commission affirmed.*

SCHWARTZ, P. J., concurs.

TUOHY, J., took no part.