**Lawrence LANDRY et al., Plaintiffs,**

**v.**

**Richard J. DALEY, Mayor of the City of Chicago, Cook County, Illinois; James Conlisk, Superintendent of Police of the City of Chicago, Illinois; John S. Boyle, Chief Judge of the Circuit Court of Cook County, Illinois; John J. Stamos, State's Attorney of Cook County, Illinois; Raymond F. Simon, Corporation Counsel of the City of Chicago, Illinois; Joseph I. Woods, Sheriff of Cook County, Illinois; Richard J. Elrod, Assistant Corporation Counsel, City of Chicago, Division of Ordinance Enforcement; Maurice W. Lee, Magistrate, Circuit Court of Cook County, Illinois; John S. Limperis, Magistrate, Circuit Court of Cook County, Illinois; John T. Burke, Joseph Ratkvich and Robert Kulovitz, Police Officers of the City of Chicago, Defendants.**

**No. 67 C 1863.**

United States District Court
N. D. Illinois, E. D.

Aug. 5, 1968.

Appeal Dismissed Dec. 9, 1968.
See 89 S.Ct. 455.

See also D.C., 280 F.Supp. 938; D.
C., 288 F.Supp. 183; D.C., 288 F.Supp.
194; D.C., 288 F.Supp. 200.

John M. Bowlus, Cotton, Watt, Jones & King, Chicago, Ill., for petitioners.

Richard J. Elrod, Asst. Corp. Counsel, City of Chicago, Chicago, Ill., for respondents.

## MEMORANDUM OPINION

WILL, District Judge.

On March 4, 1968, this Court declared two ordinances of the City of Chicago unconstitutional, D.C., 280 F.Supp. 968, Chapter 193, Section 1 of the Municipal Code entitled "Disorderly Conduct," and Chapter 11, Section 33 thereof, dealing with resisting an officer. On March 18, 1968, a prospective injunction was entered effective March 20, 1968, proscribing any future enforcement of the ordinances in question or the institution of any new prosecutions thereunder. At the same time the Court announced that it would make *ad hoc* determinations in those pending cases brought to its attention as to whether there was probable cause for prosecution of conduct constituting a breach of the peace or whether they involved solely activities protected by the First Amendment to the United States Constitution and would exercise its equitable powers only in those pending cases in which there was no such probable cause.

The instant petition for injunctive relief is the second such *ad hoc* determination we have faced. On March 27, 1968, we denied the petitions of Esse Wells and Donald Weatherall for injunctive relief. In the instant case, petitioner, Richard Lawrence, is currently a defendant in the state court facing prosecution on alleged violations of the disorderly conduct and resisting arrest ordinances which we have held to be unconstitutional.

Petitioner is an ordained Methodist minister who, in addition to membership in various other civic organizations, acts as Chairman of the Citizens Urban Renewal Committee, an informal aggregation of various civil rights activists. This organization avowedly opposes the present urban renewal policies of the City of Chicago.

On June 9, 1967, in furtherance of this opposition, Reverend Lawrence went to the City Hall to join other members of the group in viewing action by the City Council on a petition which the group had presented. Upon his arrival there at approximately 9:15 a.m., he went to the second floor entrance to the council chambers to investigate the availability of seating in the spectator section of the chambers. Fellow members of his group who had arrived earlier informed him that the chamber doors were locked and that all the seats were occupied.

The group left the second floor and went out to La Salle Street. They were there joined by others whose addition increased the size of the group to 40 or 50 persons. Reverend Lawrence then led this group up to the second floor where they were met by Commander James Riordan of the Chicago Police Department, the Commander of the police district in which the City Hall is located and one of the department's most experienced officers. Lawrence asked Riordan about seating in the spectator section on the second floor. Riordan replied that no seats were open in the second floor section but that seats were available in the balcony on the third floor. He further informed the group that access lanes on the stairways and in the halls must be kept open.

With that remonstrance from Riordan, Lawrence's group left the building and set up a picket line on Clark Street. After picketing for a short time, Lawrence led the group back into City Hall and up the stairway to the second floor. Commander Riordan met the group at the head of the stairs. Lawrence stated that the group intended to sit in the third floor balcony. Riordan said that a fireman would first have to check the

seating capacity of the balcony. Lawrence then turned the group around and they marched down the stairs.

The group did not leave the building, however, but proceeded to march along a first floor corridor chanting "Stop urban renewal." Riordan received a telephone complaint from the City Collector's office about the noise and walked downstairs to confront the group. He told the group that they were making too much noise and that if they continued they would be arrested for breach of the peace. The group then left the building.

Once outside, Lawrence and the others decided that they would attempt to gain access to the council chambers by approaching the chambers singly and waiting for a vacant seat. Lawrence was the first to go upstairs and he was met by Commander Riordan at the stairs leading to and just outside the council chambers. Lawrence demanded to be let into the spectator section of the chambers. Riordan told him that other people were waiting and that he would be admitted when seats were available. Lawrence replied, "I don't believe that room is filled." Immediately after this remark the council's sergeant at arms, Mr. William F. Harrah (now deceased), stepped out of the council chambers and said, "What is going on now?". Riordan asked him if there were seats available and he said "No." Riordan then asked Lawrence to leave.[1]

Lawrence replied, "I am not going to leave. You can't move me out of here. I want to go in there and I am going to go in." Riordan said, "You are going to force me to place you under arrest." Lawrence retorted, "I am not going to move from here." With that statement, Riordan told Lawrence that he was under arrest. Riordan took him by the

arm and Lawrence pulled his arm away, saying, "You are not going to move me from here." However, Lawrence made no physical resistance when Riordan and a patrolman led him away from the steps.

■ The City of Chicago, respondent in the instant action and complainant in the prosecution in the state court, does not contest the fact that Reverend Lawrence was engaged in activities normally protected by the First Amendment, i.e., voicing protest over existing social conditions. Such protest is not protected where it creates a clear and present danger that it will bring about substantive evils which the government has a legitimate interest in preventing. Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919). Such legitimate interest is found in the classic Holmes hypothetical in the *Schenck* opinion that the state can prevent a man from shouting "Fire" in a crowded theatre.

In the instant case the city had three possible reasons for objecting to Reverend Lawrence's conduct at the time of his arrest. First, the city may have wished to protect the citizens present in the second floor hallway outside the council chambers from being annoyed. Second, the city had an obligation to protect its citizens from fire hazards by keeping access lanes open to the chambers. Finally, the city had a legitimate interest in protecting the deliberations of the City Council from outside disturbances.

■ The evidence presented at the hearing on the instant petition fails to disclose that Lawrence's action had any disturbing effect on the citizens present in the second floor hallway outside the council chambers. Consequently, Mr. Lawrence's conduct cannot be said to have constituted a breach of the peace as far as they were concerned and it is

---

1. Commander Riordan on direct examination stated that he had told Lawrence that he could wait in line along the wall leading to the council chambers until seats became available. On cross examination, Riordan admitted that while he had told Lawrence during the previous confrontations the same morning that there was a waiting line against the wall, he did not do so at the confrontation which resulted in Lawrence's arrest. He simply asked him to leave.

well established that disturbing police-men is not disorderly conduct. The Illinois Appellate Court in Oratowski v. Civil Service Commission of City of Chicago, 3 Ill.App.2d 551, 123 N.E.2d 146 (1st Dist. 1954), stated the applicable proposition as follows:

> "It is apparent from this statement of the law that words addressed to an officer in an insolent manner do not without any other overt act tend to breach the peace because it is the sworn duty and obligation of the officer not to breach the peace and beyond this to conduct himself so as to keep others from so doing."

■ Nor does the desire to keep access lanes open justify the inhibition of Lawrence's speech by arrest. While Lawrence was told in earlier confrontations that people interested in seating in the council chambers had to wait in line against the wall, prior to his arrest he was simply ordered to leave. Commander Riordan gave him no opportunity to stand against the wall. It may be doubted that the presence of only one man could constitute a fire hazard. In any event, it is clear that Commander Riordan did not ask him to stand against the wall and his arrest was not predicated on any alleged blocking of access to the council chambers.

■ As to the city's interest in protecting the deliberations of the city council from outside disturbances, the question before this court is whether the city's testimony establishes probable cause for concluding that Reverend Lawrence's actions at the time of his arrest were disturbing the council. That probable cause did not exist is clear. The only possible evidence of the council being disturbed was the appearance by the sergeant at arms, Mr. Harrah, who opened the chamber doors and asked, "What is going on now?". This statement's relevance to the question of disturbing the council is dubious since Harrah's questions came before Lawrence made the statements which precipitated his arrest. Further, with Harrah's

death, the reason why he asked the question remains unanswered. No other evidence has been adduced to indicate that Lawrence's statements could even be heard in the council chambers.

■ Nor does the alleged "loudness" of Lawrence's statements justify a finding of probable cause. The only relevance of the decibel level of Lawrence's voice is whether his voice disturbed the council proceedings. Absent corroborating evidence of disturbance, the mere subjective judgment of a police officer that a person's voice is "loud" is not enough to justify an arrest. We must look to the physical context of the statements as well as the physical qualities of the statements themselves. What is normal tone of voice for one situation, i.e., a spectator at a football game, may not be protected speech in another situation, i.e., the middle of the night on a quiet, residential street.

■ Applying this standard to the instant case we find first that Commander Riordan at no time felt that Lawrence was shouting, he was speaking in a "loud" voice. While Lawrence's speech ranged across three levels of increasing loudness, we find no corroborating evidence to support the conclusion that the speech for which Lawrence was arrested constituted a threat to the peaceful deliberations of the council, or, as previously indicated, annoyed or disturbed other persons in the vicinity. Given this dearth of evidence, we find that no probable cause existed for concluding that Lawrence's speech, which under ordinary circumstances would be protected by the First Amendment, had lost that protection by reason of the surroundings in which it was uttered.

■ Our conclusion is buttressed by Commander Riordan's acknowledgment that he made the arrest not simply for Lawrence's immediate speech but because he concluded that Lawrence's cumulative conduct that morning demonstrated an intent to be disruptive. Whether or not any earlier act or acts by Reverend Lawrence would have justi-

fied his arrest for disorderly conduct is irrelevant to the issue of whether the conduct which actually precipitated his arrest, his statements at the steps to the council, justified it.

■ Nor do we find probable cause for prosecuting Reverend Lawrence on the charge of resisting arrest. The only act which supports the charge is Lawrence's pulling his arm away when Riordan placed him under arrest. The testimony of all witnesses indicates that this movement was almost a reflex action. The apparent unintentional nature of this action, when coupled with his admitted willingness to submit to the custody of the officers immediately thereafter, requires the conclusion that no probable cause exists for the charge of resisting arrest.

Accordingly, we conclude that the evidence presented by the City of Chicago fails to establish probable cause for a finding that the petitioner herein was engaging in anything other than constitutionally protected activity at the time of his arrest. We therefore find it appropriate to exercise our equitable power to enjoin the prosecution of Reverend Lawrence in the state court on charges arising out of his conduct at City Hall on June 9, 1967.

■ The federal anti-injunction statute, 28 U.S.C. § 2283, which prohibits a federal court from enjoining pending state court proceedings unless certain exceptional situations exist does not bar the use of our injunctive power in the instant situation. We have already entered a judgment declaring the ordinances in question unconstitutional as overly broad and too vague to meet due process requirements. We have further noted that the effect of such legislation when applied to first amendment activities is particularly egregious. Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963). Consequently, we find an injunction necessary to effectuate our judgment of unconstitutionality of the ordinances. An injunction necessary to "protect or effectuate"

the judgment of a federal court is a stated exception to the prohibition of section 2283.

Pursuant to the conclusions reached herein, an injunction shall issue prohibiting the defendant Raymond F. Simon in his capacity as Corporation Counsel of the City of Chicago or any of his subordinates from further prosecuting Richard Lawrence on charges arising from his activities at City Hall June 9, 1967.