*Warren B. Rudman,* attorney general, and *John S. Kitchen,* attorney, filed a memorandum of law.

Roman Catholic Bishop of Manchester, by *Burns, Bryant, Hinchey, Cox & Shea,* filed a memorandum of law.

Coos
No. 6501

STATE OF NEW HAMPSHIRE v. DAVID A. OLIVEIRA

October 31, 1975

560

*Warren B. Rudman,* attorney general, and *James L. Kruse,* attorney (*Mr. Kruse* orally), for the State.

*Thomas M. Pancoast,* by brief and orally, for the defendant.

DUNCAN, J.   This is an appeal to the superior court from a conviction by the Berlin District Court *(George H. Keough,* Special Justice) under RSA 570:1 (1955) for the offense of rude and disorderly conduct. *See State v. O'Neill,* 105 N.H. 15, 191 A.2d 528 (1963). Defendant was convicted in a jury-waived trial *(Grant,* J.) in the superior court on June 1, 1972, and sentenced to the house of correction for ninety days, thirty of which were suspended. The issues raised by defendant's exceptions were reserved and transferred by *Grant,* J. RSA ch. 570 was repealed by Laws 1973, 532:26 I, and superseded by RSA ch. 644. Defendant makes the single contention that his conviction was inconsistent with recent decisions of the United States Supreme Court, defining the area of speech protected by the first amendment to the United States Constitution.

The facts indicated that on the evening of January 29, 1972, the defendant along with others attended a public dance at the gymnasium of the Berlin Community Club. The defendant, a twenty-five-year-old federal parolee on release under the Mainstream Program, was working as athletic advisor to the club. He attended the dance as club representative, to supervise and take charge of closing the building after the event. During an intermission he addressed the crowd with regard to the financial plight of the club, urging those present to attend an upcoming meeting of the city council to emphasize the club's need for increased funding. The defendant spoke alternately with a second participant, both men using the public address system in the hall. The third time the defendant addressed the gathering, he began with the phrase "F---k the political pigs". In the next few minutes, he repeated or modified the exhortation to include the phrase "don't worry about the other f---kin' pigs" and words to the effect that this was a "pig nation". Interspersed with these epithets were pleas that people attend the upcoming city council meeting.

Defendant was arrested by police who were present, but only after the dance had concluded and the hall was nearly empty. He

was subsequently charged by complaint under the provisions of RSA 570:1 (1955) of the chapter relating to "Offenses Against Public Order and Decency". The sole allegation in the complaint charged rude and disorderly conduct in a public place. There was no allegation that this behavior was otherwise "disorderly" within the terms of the statute.

The State relies to some extent upon the proposition that the conduct involved in this case had no expressive value relating to the subject under discussion and thus forfeits any protection the first amendment provides. To argue that this was not speech, in that it lacked significant communicative value, is to argue against the weight of the evidence. The defendant, as recreation director for the community club, had a legitimate interest in seeing that the club received adequate funding. The record reveals that he began his speech in a somewhat conventional manner, and only after attention lagged made the opprobrious references presumably to members of the city council. Taken in context, the phrases in question bore a relationship to the defendant's overall message. The defendant obviously felt that the club was not getting fair consideration from the council, and was expressing his displeasure at the political situation there. It cannot be said that the Constitution has no regard for words "chosen as much for their emotive as their cognitive force". *Cohen v. California,* 403 U.S. 15, 26 (1971). Considerations of the effectiveness of the defendant's decided course of action are irrelevant here. *See Baumgartner v. United States,* 322 U.S. 665, 673-74 (1944).

This is not a case involving "fighting words" admittedly subject to greater regulation by the State because of their inherent capacity to occasion a breach of the peace. *Chaplinsky v. New Hampshire,* 315 U.S. 568 (1942). The defendant's references were not to persons present at the time. *Chaplinsky* and subsequent cases clearly indicate that the term "fighting words" is meant to apply to "face-to-face words plainly likely to cause a breach of the peace by the addressee . . . ." *Id.* at 573; *see Cohen v. California,* 403 U.S. at 20 (1971); *Gooding v. Wilson,* 405 U.S. 518, 527 (1972); *Lewis v. New Orleans,* 415 U.S. 130 (1974); *Bachellar v. Maryland,* 397 U.S. 564, 567 (1970); *Street v. New York,* 394 U.S. 576, 592 (1969). The officers who testified conceded that the speaker's remarks were not directed to them in particular, or to the police in general.

The case does not involve words which, though not personally abusive, nevertheless occasion a "clear and present danger of riot, disorder . . . or other immediate threat to public safety, peace or

order . . . ." *Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940). *See also Feiner v. New York*, 340 U.S. 315, 320-21 (1951); *Terminiello v. Chicago*, 337 U.S. 1 (1949); *cf. State v. Albers*, 113 N.H. 132, 303 A.2d 197 (1973). The defendant was allowed to continue his speech uninterrupted by the police and at its conclusion the dance resumed in a normal manner. Two officers testified that the defendant did not exhort the crowd to violence and there was no violent reaction to the speech beyond elevation of the noise level. An "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression". *Tinker v. Des Moines School Dist.*, 393 U.S. 503, 508 (1969).

The State further seeks to justify the conviction in this case by balancing the admitted right of the defendant to speak against the right of an unwilling listener to be free from exposure to this type of offensive language. In *Cohen v. California*, 403 U.S. 15 (1971), the United States Supreme Court stated:

> "The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is . . . dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner". *Id.* at 21.

The "mere presumed presence of unwitting [or unwilling] listeners" is not a sufficient basis upon which to rest the exercise of the State's power in this case. *Id.* In *Cohen,* the Court found that display of the words "Fuck the Draft" on the defendant's jacket while in a courthouse in which women and children were present did not rise to the level of an invasion of the onlookers' right of privacy. *Id.; see Erznoznik v. Jacksonville*, 422 U.S. 205 (1975). There is evidence in the case at bar that any unwilling listeners could have retreated downstairs without forfeiting their right to return when the dance resumed.

However distasteful the language used by this defendant is to the average person, this case is controlled by *Rosenfeld v. New Jersey*, 408 U.S. 901 (1972) and *Cohen v. California*, 403 U.S. 15 (1971), which require dismissal of this complaint. In *Rosenfeld*, the United States Supreme Court summarily vacated a conviction for disorderly conduct and remanded the case to the New Jersey courts for consideration in light of *Cohen v. California supra* and *Gooding v. Wilson*, 405 U.S. 518 (1972). The conviction was based solely on the defendant's use of a crude phrase similar to that used by the de-

fendant in this case which he repeated a number of times during an address at a public meeting of the school board attended by some 150 people. On remand, the New Jersey Supreme Court reversed the conviction citing *Cohen* and *Gooding. State v. Rosenfeld,* 62 N.J. 594, 303 A.2d 889 (1973). *See also Commonwealth v. A Juvenile,* (Mass., September 11, 1975).

In conclusion it may be noted that the 1971 legislature acted to eliminate convictions for the type of conduct here in question. Laws 1971, 518:1, effective November 1, 1973. In rewriting the disorderly conduct statute, the legislature has required that future convictions be based on a course of abusive or obscene language engaged in for the purpose of causing public inconvenience, annoyance, or alarm. RSA 644:2 II (d). The official comment to this section stated that the statute has been designed to "avoid the risk of having offenses arise upon the more or less spontaneous outburst of a single profane word or phrase". Report of Comm'n to Recommend Codification of Criminal Laws, Comment to RSA 589:2, at 100 (1969).

*Defendant's exception sustained; complaint dismissed.*

All concurred.