Rockingham
No. 90-213

THE STATE OF NEW HAMPSHIRE

v.

SONDRA MURRAY

March 20, 1992

*John P. Arnold*, attorney general (*Susan G. Morrell*, assistant attorney general, on the brief and orally), for the State.

*Nixon, Hall and Hess P.A.*, of Manchester (*Francis G. Murphy, Jr.* on the brief and orally), for the defendant.

BATCHELDER, J.   The defendant, Sondra Murray, was charged with disorderly conduct, RSA 644:2, III(a), resisting arrest, RSA 642:2, and possession of marijuana, RSA 318-B:2, misdemeanors all reduced by the State to violations before trial, *see* RSA 625:9, VI (Supp. 1991). After a trial by the Court (*Temple*, J.), the defendant was acquitted of resisting arrest, but convicted of disorderly conduct and possession of marijuana, and now appeals both convictions. On the disorderly conduct charge, she claims that because no member of the public was present, her conduct did not violate the disorderly conduct statute. On the possession charge, she claims that the marijuana was illegally obtained by the police, and therefore should have been suppressed. For the reasons stated below, we reverse both convictions.

On February 14, 1987, Sondra Murray and her friend, Andre Roy, were out on a date. Late in the evening, Roy was stopped for erratic driving by the Exeter police. Having established that Roy was driving with a revoked license, Officer Estabrook, who initiated the stop, arrested him. Although no assistance was requested, Sergeant Kane, who heard Estabrook's radio transmissions, arrived at the scene to render assistance.

During the arrest of the driver, the defendant was sitting in the passenger seat of the car. She shouted something from the window, and though neither officer could recall what she said, the defendant claimed she was merely curious about what was taking place. Regardless of what was said, and although Officer Estabrook was only a few feet away, neither the defendant's remarks nor their volume interfered with, Officer Estabrook's arrest of Roy. When Sergeant Kane asked the defendant for identification, and she could find none, he informed her that he would not let her drive the car. According to Kane, the defendant then shouted a number of vulgarities, including "you can have a happy, f---ing Valentine's Day." Although Sergeant Kane was upset, there was no evidence that any member of the public was disturbed by these events. The defendant was subsequently arrested for disorderly conduct and resisting arrest. While Sergeant Kane was arresting the defendant, her right arm was twisted behind her back in some manner and was broken above her elbow, causing some permanent impaired movement.

The officers radioed for a fire department rescue team to attend to the defendant and her injuries. Sergeant Kane obtained possession of the defendant's purse, although he could not remember how or when. After the rescue team arrived and took custody of the defendant, Sergeant Kane searched the purse, initially for identification,

but continued to search and found a small amount of marijuana inside a closed film canister. The defendant was subsequently charged with possession of the marijuana.

First, we consider whether the defendant's behavior constituted disorderly conduct. The statute under which she was convicted provides that a person is guilty of disorderly conduct if "[h]e purposely causes a breach of the peace, public inconvenience, annoyance or alarm . . . by . . . [m]aking loud or unreasonable noises in a public place . . . , which noises would disturb a person of average sensibilities . . . ." RSA 644:2, III. The defendant argues that because no one other than the arresting officer was disturbed, there was not the "public inconvenience, annoyance or alarm" necessary for a statutory violation. Thus, this case presents the question of whether there is public inconvenience, annoyance or alarm for the purposes of the New Hampshire disorderly conduct statute when the evidence shows that the only person disturbed was the arresting officer.

Because neither the express language of the statute nor any of our prior decisions answers the question presented here, we turn to the legislative history of RSA 644:2. The disorderly conduct statute, adopted as part of the Criminal Code in 1971, was recommended to the legislature in the REPORT OF COMMISSION TO RECOMMEND CODIFICATION OF CRIMINAL LAWS, Laws 1967, ch. 451 [hereinafter REPORT]. The Commission's language in pertinent part is identical to that of the current statute: "A person is guilty of disorderly conduct if . . . *with a purpose to cause public inconvenience, annoyance or alarm,* . . . he makes unreasonable noises . . . ." REPORT, *supra* § 589:2(II)(b), at 99 (emphasis added). According to the Commission comments, "[t]his section is a modified version of the Michigan Revised Criminal Code, Final Draft § 5525." REPORT, *supra* at 100. The Michigan Code is also substantially identical: "A person commits the crime of disorderly conduct if, with *intent to cause public inconvenience, annoyance or alarm,* . . . he . . . [m]akes unreasonable noise . . . ." MICHIGAN REVISED CRIMINAL CODE, Final Draft § 5525(1)(b) (Sept. 1967) (emphasis added). According to the Michigan committee's commentary in the final draft of the code, it codifies Michigan's common law on the issue. *Id.* The commentary cites *People v. O'Keefe,* 218 Mich. 1, 187 N.W. 282 (1922), as stating the common law on disorderly conduct.

*O'Keefe* held that there was no disturbance of the peace, and thus no disorderly conduct, when the only person witnessing or disturbed by the conduct was the arresting officer. "It does not appear that any person other than the officer was 'disturbed' . . . . [Thus] [i]t seems

clear to us that the offense charged was not proven . . . ." *Id.* at 4, 187 N.W. at 283.

The New Hampshire Commission also refers to the Model Penal Code in its comments regarding the disorderly conduct statute. RE-PORT, *supra* at 100. The Model Penal Code's language is similar to the wording of the New Hampshire statute: "A person is guilty of disorderly conduct if, *with purpose to cause public inconvenience, annoyance or alarm*, . . . he . . . makes unreasonable noise . . . ." MODEL PENAL CODE AND COMMENTARIES § 250.2(1)(b) (1980) (emphasis added). The commentary makes clear, on several grounds of policy, that the arresting officer is not a member of the public for the purposes of the statute. First, "[w]here it is the policeman's peace and quiet that are allegedly disturbed, the policeman's role in the situation is that of victim and 'judge' . . . [because] [t]he arrest itself is a sanction." *Id.* § 250.2(7)(i). Second, because "[h]ostility to policemen . . . rests in part on a feeling that arrests often reflect affront to the policeman's personal sensibilities rather than vindication of the public interest," it would "improve police prestige if the law and police administration took a conservative approach to penalizing petty wounds to policemen's sensibilities." *Id.* Third, part of an officer's duty "necessarily involves him in many arrests of people who are understandably outraged, however proper the policeman's action may be," because "it is the policeman's unhappy lot to be dealing most frequently with the most unruly and unrefined elements of the population." *Id.* § 250.2(7)(ii). Finally,

> "Insofar as the theory of disorderly conduct rests on the tendency of the actor's behavior to provoke violence in others, one must suppose that policemen, employed and trained to maintain order, would be least likely to be provoked to disorderly responses . . . . 'A properly trained officer may reasonably be expected to "exercise a higher degree of restraint" than the average citizen, and thus be less likely to respond belligerently to "fighting words."'"

*Id.* § 250.2(7)(iii) (quoting *Lewis v. City of New Orleans*, 415 U.S. 130, 135 (1974) (Powell J., concurring)).

We find the above sources of legislative history persuasive, and hold that someone other than the arresting officer must be disturbed for there to be a public disturbance within the meaning of RSA 644:2, III(a).

Our sister State, Maine, concurs in this result. In *State v. John W.*, 418 A.2d 1097 (Me. 1980), the Maine Supreme Judicial Court held

that, under a statute prohibiting disorderly conduct, the words spoken by the defendant must have a direct tendency to disturb an ordinary person in the situation of the person insulted. But "the fact finder must consider those personal attributes of the addressee which were reasonably apparent because those attributes are a part of the objective situation in which the conduct occurred." *Id.* at 1104. Because a police officer presumably would not readily respond with violence to the defendant's insulting words, the conduct was not in violation of the statute. *Id.* at 1106. "'An officer of the law must exercise the greatest degree of restraint in dealing with the public.'" *Id.* at 1107 (quoting *Oratowski v. Civil Service Commission,* 3 Ill. App. 2d 551, 561, 123 N.E.2d 146, 151 (1954)).

In order for the State to have prevailed on the complaint in this case, it had to prove beyond a reasonable doubt that the defendant purposely caused a breach of the peace, public inconvenience, annoyance or alarm by making loud or unreasonable noises in a public place. On the facts here the only persons within hearing of the defendant's verbal assaults were the two officers, who, we hold, were not within the ambit of the statute's protection. Whether others were in fact inconvenienced, annoyed or alarmed was a fact to be proven and not presumed. *Cf. State v. Oliveira,* 115 N.H. 559, 562, 347 A.2d 165, 168 (1975) (conviction for disorderly conduct reversed on first amendment grounds, where no evidence of violent reaction to defendant's speech; "'mere presumed presence of unwitting [or unwilling] listeners' is not a sufficient basis upon which to rest the exercise of the State's power in this case." (Citation omitted.)). If persons in their homes were thus disturbed, we do not know. Guess, surmise and conjecture fall far short of proof beyond a reasonable doubt. Unsupported by such proof, the defendant's conviction for disorderly conduct cannot stand.

The defendant further claims that the disorderly conduct statute is unconstitutionally vague, and she also seeks to amend her notice of appeal to argue that the State failed to prove the violation beyond a reasonable doubt. Because we find that the defendant was not in violation of the statute, we need not reach the constitutional issue nor rule on the motion to amend.

We now turn to the defendant's conviction for possession of marijuana, and her argument that the marijuana was illegally obtained and should be suppressed. In analyzing the legal propriety of a search of one's possessions, a good place to start is with the language of the State Constitution, which protects our inhabitants from

the seizure by the State of their property in the absence of a warrant supported by oath or affirmation specially designating the objects of the seizure and issued with the "formalities, prescribed by law." N.H. CONST. pt. I, art. 19. In the absence of a lawful warrant, all searches are *per se* unreasonable unless conducted within the narrow confines of a judicially crafted exception. *State v. Gallant*, 133 N.H. 138, 144, 574 A.2d 385, 389 (1990). The only exception applicable on these facts and urged upon us by the State is a search conducted incident to arrest. In the absence of a warrant the burden is on the State to show that the conduct of the search falls within the claimed exception. *See id.*

■ In order for the search incident to arrest exception to be applicable, the search and seizure must be made contemporaneously with the arrest and only with respect to those items within the defendant's immediate control. *Preston v. United States*, 376 U.S. 364, 367 (1964); *State v. DeGrenier*, 128 N.H. 547, 549, 517 A.2d 814, 816 (1986) (search must be "substantially contemporaneous" with arrest); *see also Smith v. Ohio*, 494 U.S. 541, 543 (1990). Justified by the need to prevent physical harm to the arresting officer, destruction of evidence, and possession of elements of escape, the search-incident exception authorized "the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area." *New York v. Belton*, 453 U.S. 454, 457 (1981) (citing *Chimel v. California*, 395 U.S. 752 (1969)).

■■ A search incident, to be deemed contemporaneous with the arrest, requires both temporal and spatial proximity. *See State v. Smith*, 61 Wash. App. 482, 485, 810 P.2d 982, 985 (1991) (search of "fanny pack," not attached to arrestee at time of seizure and searched "at the convenience of the arresting officer after the arrestee has been secured," not incident to arrest), *review granted*, 818 P.2d 1098 (Wash. 1991); *State v. Badgett*, 200 Conn. 412, 428, 512 A.2d 160, 169 (search of bag discovered in arrestee's vehicle when arrestee already in police car leaving scene not incident to arrest), *cert. denied*, 479 U.S. 940 (1986). Although it is not clear in this case when Sergeant Kane seized the defendant's pocketbook, what is clear is that at the time he explored its contents, the defendant was not at hand but was in an ambulance about to be transported to the hospital. Sergeant Kane did not search the defendant's purse at the time he placed her under arrest, nor did he search it between the time he called for an ambulance and the time of its arrival. Only after the defendant was securely in the custody of the rescue team did Ser-

geant Kane undertake the search. There is no other evidence that the search was contemporaneous with her arrest. Because whatever was in her purse could not at that time have posed a threat to the welfare of the officer, aided her in effecting an escape, or been destroyed by her, the common-sense factors underlying the rationale for the search incident to arrest exception were not present. *See Preston,* 376 U.S. at 367 (justifications for search-incident exception "are absent where a search is remote in time or place from the arrest"). Where the defendant's purse was thus searched "at the officer's convenience after passage of appreciable time," *Smith,* 61 Wash. App. at 486, 810 P.2d at 985, and "was at all times under the exclusive control of the arresting officer," *id.,* the search of its contents was not incident to the arrest.

The State in support of the search in this case relies principally on four New Hampshire cases, *State v. Dunbar,* 117 N.H. 904, 379 A.2d 831 (1977); *State v. Maxfield,* 121 N.H. 103, 427 A.2d 12 (1981); *State v. Cimino,* 126 N.H. 570, 493 A.2d 1197 (1985); and *State v. Levesque,* 123 N.H. 52, 455 A.2d 1045 (1983). Each of these cases is easily distinguished from the case at hand. First, *Levesque* involved an inventory search pursuant to a standard police policy, a justification for the search on which the State never relied here. In *Dunbar* the defendant's wallet was seized when he was arrested and was apparently searched in his presence for the money (evidence) which he had just stolen from the complainant. *Cimino* involved the seizure and inspection of a notebook while the defendant was being committed to jail following his arrest. In *Maxfield* the officer, while patting down the defendant at the police station during booking for DWI, dislodged a canister which was then searched in the defendant's presence. In these cases the property at issue had been taken from the defendant's person and inspected either at the time of arrest or in the booking process at the police station. *See United States v. Robinson,* 414 U.S. 218, 235 (1973) (lawful custodial arrest authorizes "full search of the person"). None of these cases supports the State's search and seizure of the contents of Murray's pocketbook at a time and place distant from her.

Finally, we note that in *New York v. Belton* the United States Supreme Court considered the permissible scope of a search incident to the arrest of the occupants of an automobile, arrested for possession of marijuana in the automobile. 453 U.S. at 456–57. *Belton,* neither cited nor relied upon by the State, appears to stand for the proposition that the searchable area within the ambit of control of an arrestee includes the entire passenger compartment of an automobile.

We find it unpersuasive authority for the search here. The *Belton* Court, in defining the bases for the search-incident exception, points to "'the exigencies of the situation.'" *Id.* at 457 (citation omitted). One is hard pressed indeed to perceive anything exigent in connection with Kane's rummaging through Murray's purse in the quiet solitude of the evening after the latter had left the scene.

The defendant finally argues that evidence of the marijuana should be excluded on the basis of the fourth amendment, because the search was the result of an arrest which employed unconstitutionally excessive force. *State v. Sundberg*, 611 P.2d 44 (Alaska 1980); *see also Ellis v. State*, 553 N.E.2d 829 (Ind. 1990); *Roose v. State*, 759 P.2d 478 (Wyo. 1988). Because we decide the case on other grounds, we need not address this issue.

*Reversed.*

All concurred.