UNITED STATES of America,
Plaintiff-Appellant,

v.

Gary Lewis GALLOP,
Defendant-Appellee.

No. 78–1663.

United States Court of Appeals,
Ninth Circuit.

July 20, 1979.

Rehearing Denied Oct. 22, 1979.

James C. Waldo, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellant.

Irwin H. Schwartz, Federal Public Defender, Seattle, Wash., for defendant-appellee.

Before WRIGHT and GOODWIN, Circuit Judges, and WILLIAMS *, District Judge.

GOODWIN, Circuit Judge:

The government appeals an order suppressing certain stolen money orders upon the motion of Gary Lewis Gallop. After an earlier remand from this court, the district court held a hearing and found that Gallop had reasonably appeared to police officers to be "incapacitated by alcohol" within the meaning of Wash.Rev.Code Ann. § 70.-96A.120(2), and thus was properly detained under that noncriminal, protective custody statute.[1] The only remaining issues arise

---

* The Honorable Spencer Williams, United States District Judge for the Northern District of California, sitting by designation.

1. Section 70.96A.120(2) is a part of the State of Washington's version of the Uniform Alcoholism and Intoxication Treatment Act. It provides in relevant part:

"* * * [A] person who appears to be incapacitated by alcohol and who is in a public place * * * shall be taken into protective custody by the police or the emergency service patrol and as soon as practica-

ble, but in no event beyond eight hours brought to an approved treatment facility for treatment. If no approved treatment facility is readily available he shall be taken to an emergency medical service customarily used for incapacitated persons. The police or the emergency service patrol, in detaining the person and in taking him to an approved treatment facility, is taking him into protective custody and shall make every reasonable effort to protect his health and safety. In taking the person into protective custody, the detaining officer or member of an emergency

from the search that resulted in the seizure of the money orders.

■ Gallop, in the company of Frances Jo Connors, was evicted from a cocktail lounge at the Seattle-Tacoma International Airport after Connors became abusive and assaulted a waitress. Port of Seattle police officers decided that the couple, including the semirecumbent Gallop, were candidates for detoxification custody under the cited state law. The officers placed both under temporary detention. The officers "pat-searched" the two and placed them in a holding cell to await transportation to a detoxification facility. The pat-down for weapons was permissible. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967).

In the course of the pat-down, the police took Gallop's wallet and comb. The officer who took them testified that he feared Gallop might attempt to use the comb as a weapon; the wallet, he said, was large and hanging from Gallop's pocket, provoking concern that Gallop would lose it.

After arrival at the holding facility, the officers began an "inventory" of the personal effects of the two detainees. This inventory, they said, was routine procedure in the department. They assumed that the routine applied to the detentions under the Washington intoxication statute as well as to arrests for crime. At the suppression hearing, the government introduced a general order of the Port of Seattle police outlining routine inventory procedures for the booking and processing of "prisoners".

The inventory began with the contents of a large basket-type bag that Connors was carrying. The officers found syringes, pills, and prescription bottles. Some of the bottles bore Gallop's name. The officers then placed both Gallop and Connors under arrest on suspicion of violating the state controlled-substance act. The officers later admitted that they had no idea what the pills were, but assumed that some of them were illegal.

The officers then continued their search of Connors' bag and found several money orders. They then searched Gallop's wallet, and found more money orders in it. The money orders, on subsequent inquiry, were discovered to have been stolen. Gallop and Connors were indicted by a federal grand jury for possession of goods stolen from the mail, in violation of 18 U.S.C. § 1708.

The trial court held that the money orders taken from Gallop's wallet were inadmissible as products of an unreasonable search. The court held that the inventory of Connors' bag was unreasonable because the officers had no basis for searches of detainees in protective custody. Therefore, the court decided, the arrests of Gallop and Connors on suspicion of violating the drug laws were illegal, because they were based upon illegally discovered evidence. The search of Gallop's wallet subsequent to his arrest was also held to be illegal because his arrest was illegal.

The prosecution seeks to justify the warrantless searches of the bag and wallet alternatively as searches incident to a lawful arrest, or as inventories.

*Search Incident to Arrest.*

■ At the time Gallop and Connors were taken to the police holding cell, they were not under arrest. The Washington protective custody statute, under which the officers detained the two, expressly provides that protective custody "is not an arrest". Therefore, the officers could not justify the search of Connors' bag as the sort of search sanctioned in *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

■ The search of Gallop's wallet, on the other hand, could be justified under the Fourth Amendment as a search incident to an arrest, but only if his arrest on drug charges was based on properly seized evidence that provided the officers with proba-

patrol may take reasonable steps including reasonable force if necessary to protect himself or effect the custody. A taking into protective custody under this section is not

an arrest. No entry or other record shall be made to indicate that the person has been arrested or charged with a crime."

ble cause to believe Gallop had committed a crime. Assuming, arguendo, that the material seized from Connors' bag could have provided probable cause to arrest Gallop, the prosecution is forced back to the question of the search of the bag. At the time of that search, Connors was not under arrest. The search of Gallop's wallet, like that of Connors' bag, can thus be justified only as an inventory procedure, the issue we consider next.

*Inventory Procedure.*

■ At the time of the inventory procedure challenged here, the law of this circuit permitted the inventory of the contents of containers seized from persons arrested for crimes, even when those containers were not found inside vehicles. *United States v. Friesen,* 545 F.2d 672 (9th Cir. 1976), *cert. denied,* 433 U.S. 911, 97 S.Ct. 2980, 53 L.Ed.2d 1096 (1977). Whether *Friesen* survives the Supreme Court's decision in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), is not before us. *Chadwick* was decided after the search that is questioned here, and it is not to be applied retroactively. *See United States v. Stewart,* 595 F.2d 500 (9th Cir.) (as amended April 19, 1979). Accordingly, the Fourth Amendment did not prohibit the opening of personal containers such as Gallop's wallet and Connors' purse.

Given that *Friesen* stated the law of the circuit at the time the officers inventoried the belongings of Connors, we turn to *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), for the rationale of the routine police inventory. In *Opperman,* the court outlined the reasons for these caretaking procedures. At least when applied to vehicles, these procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger. *South Dakota v. Opperman,* 428 U.S. at 369, 96 S.Ct. 3092. Such inventories are generally held to be reasonable.

■ The next question in the case at bar, and one not without difficulty, is whether the reason for the officers' taking Connors into custody should alter this federal constitutional analysis. Wash.Rev.Code Ann. § 70.96A.120(2) specifies that persons taken into protective custody thereunder are not arrested, and are not charged with crime. We find no substantial basis for holding that the reasons for a police inventory which were outlined in *South Dakota v. Opperman, supra,* do not apply to property taken under police protection when the owner of the property is "detained" under police custody but not "arrested". Under Fourth Amendment standards, the inventory in this case was reasonable; the articles discovered thereby were not tainted with federal illegality.

Because there was no federal basis for imposing the exclusionary rule on the exhibits in this case, the government asserts that the evidence should not have been suppressed. Unfortunately, the matter is not quite that simple. The trial court did not pass upon the question, but Gallop argues on appeal that an inventory of the kind taken here would violate state law. He contends that evidence seized by state officers in violation of state law retains its character as illegally seized evidence when sought to be used in a federal prosecution, notwithstanding the fact that the evidence was not seized in violation of the federal constitution.

The defendant constructs his argument of illegality under state law after admitting that his own state courts have not addressed the question. He asserts, however, that if the Washington courts do take up the question, they should follow the lead of the Supreme Court of Alaska in *Peter v. State,* 531 P.2d 1263, 1272–73 (Alaska 1975). Alaska has held that an intoxicated person's effects, held by the police for safekeeping during his detention, could not be searched for evidence of crime.

Gallop next argues that, assuming that Washington will construe its statute as Alaska did for purposes of applying exclusionary rules in state courts, this court

should treat the inventory made in this case as illegal under Washington law and thus treat its fruits as excludable under the principle of *United States v. Di Re,* 332 U.S. 581, 589–90, 68 S.Ct. 222, 92 L.Ed. 210 (1948). There, the Supreme Court held that the law of the state in which a warrantless arrest is accomplished will determine the legality of the arrest (subject to federal constitutional standards).

In effect, this court is being urged once again to take up the question which we found it unnecessary to decide in *United States v. Grajeda,* 587 F.2d 1017 (9th Cir. 1978). There, we held that a search was legal under both state and federal standards, and that there was no occasion to decide the exclusionary-rule question that might be presented if the search had violated state law only. In some respects, the question urged upon us also resembles the issue decided in *United States v. Hall,* 543 F.2d 1229 (9th Cir. 1976) (en banc), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977). In *Hall,* a divided court distinguished *Di Re* and applied the federal wiretap law in such a way as to permit the use of evidence that would have been excluded under state law. In that case, there were clear holdings by the California courts setting forth the effect of state law. Here we have no clear statement of Washington law, at least none that is contrary to federal law, and we do not assume that local officers acted in violation of local law. Therefore, it was error to suppress the evidence discovered after the arrest of Gallop. Gallop's arrest was based upon probable cause which was not infected with illegality arising out of the inventory of Connors' purse.

Reversed.