## Richmond

### LARRY HUGH HAMBY

### v.

### COMMONWEALTH OF VIRGINIA

June 12, 1981.

Record No. 800929.

Present: All the Justices.

*J.D. Morefield (John M. Lamie; Browning, Morefield, Schelin and Arrington, P.C.,* on brief), for appellant.

*Vera S. Warthen, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

Larry Hugh Hamby was arrested and subsequently indicted on charges of possession of cocaine with intent to distribute, in violation of Code § 18.2-248. On January 28, 1980, Hamby was tried with a co-defendant and convicted by the court sitting without a jury. On March 20, 1980, the court fined Hamby $1,000 and sentenced him to ten years in the penitentiary.

During trial Hamby moved to suppress a quantity of cocaine seized from an unlocked, but zippered-shut briefcase found in the back seat of his automobile at the time of his arrest. The court below overruled Hamby's motion and admitted the cocaine into evidence. That ruling constitutes the grounds for Hamby's sole assignment of error.

The facts are these. At approximately 3:00 p.m. on June 7, 1979, Hamby and Hobart Junior Crotts were seated in Hamby's automobile parked in a Stuckey's store parking lot in Abingdon.

Both Hamby and Crotts were under surveillance by Virginia State Police Troopers Dean and Blevins who were located across the street in an unmarked police car. Pursuant to a prearranged plan, an undercover police informant, along with an unidentified male, drove alongside the Hamby vehicle. The informant got out of the car, and after a brief discussion, both he and Hamby walked to the rear of the Stuckey's building. Crotts exited the Hamby vehicle and made a phone call from a nearby telephone booth. The unidentified male remained in the second automobile.

A short while later Crotts, Hamby, and the informant returned to the Hamby vehicle, got in, and proceeded down State Route 75 out of Abingdon followed by the unidentified male in the second vehicle. After both cars were out of sight, the police in turn followed the two vehicles. The police were able to trail the defendants at a distance while concealed from view because the informant had been "wired" with a transmitting device. The informant had been instructed to utter "That's some good-looking stuff" as soon as any narcotics were produced.

The Hamby vehicle turned onto State Route 620, followed by the second vehicle, and parked near an old saw mill. A short while thereafter the informant gave the prearranged signal, and the police moved in.

Troopers Dean and Blevins were the first to arrive on the scene. They ordered Hamby and Crotts, who were now out of the automobile, to lie on the ground. Trooper Dean conducted a search of Hamby's person, but found no contraband. Another officer, who had by now arrived, searched Crotts and seized approximately one ounce of cocaine from his pants pocket. Hamby and Crotts were placed under arrest, handcuffed, and escorted to a marked police car.

Investigator Cecil G. Wyatt testified that he was present when Hamby and Crotts were arrested. He stated that via a radio/telephone communications link he was advised by the Washington County Commonwealth's Attorney to impound the Hamby vehicle and inventory its contents. Investigator Wyatt then searched the Hamby vehicle and discovered a black briefcase on the left rear seat. Although the briefcase was not locked, it was zippered closed. Wyatt opened the case and found a white powder which was later analyzed as cocaine. Sometime later at the Washington County jail, Hamby admitted that the briefcase was his.

It is disputed as to whether Hamby and Crotts were still at the scene of the arrest, albeit handcuffed and sitting in a police car, at the time of the search of the Hamby vehicle. Conflicting testimony indicates they were already on their way to jail. Nevertheless, it is not controverted that neither defendant possessed any further control over the Hamby vehicle, and the police were admittedly not concerned that any potential evidence contained within the automobile would be destroyed.

At trial Hamby consented to be tried as a co-defendant with Crotts. Over objection the cocaine seized from the briefcase was admitted into evidence. Hamby was convicted, and we granted his appeal to determine whether the warrantless search of his briefcase violated Hamby's Fourth Amendment rights and was therefore invalid.

■ Under *Cady* v. *Dombroski,* 413 U.S. 433, 439 (1973), the general rule is that warrantless searches without consent are *per se* unreasonable and invalid under the Fourth Amendment unless the search falls within certain well-defined exceptions. *See also Coolidge* v. *New Hampshire,* 403 U.S. 443, 454-55 (1971). Hamby advances a two-fold argument that the search of his automobile absent a warrant was invalid. First, while conceding that police possess the right to search an automobile on the open road when they have probable cause to believe it contains evidence of a crime, *see Carroll* v. *United States,* 267 U.S. 132 (1925), and *Chambers* v. *Maroney,* 399 U.S. 42 (1970), Hamby argues that such right does not extend to personal luggage contained within an automobile. *United States* v. *Chadwick,* 433 U.S. 1 (1977), and *Arkansas* v. *Sanders,* 442 U.S. 753 (1979). Second, Hamby contends that, assuming the search of his automobile was for the purpose of taking an inventory of its contents, the police cannot enter a closed briefcase but must instead inventory the item as a whole. In addressing Hamby's assignment of error, we need only consider his second argument.

We note at the outset that, regarding the question of a permissible inventory search of an unlocked item of personal luggage, this is a case of first impression in Virginia. In *Girardi* v. *Commonwealth,* 221 Va. 459, 270 S.E.2d 743 (1980), the defendant attempted to argue the identical issue but was prevented from doing so for failure to raise the question at the trial level.

■ In *South Dakota* v. *Opperman,* 428 U.S. 364 (1976), the Supreme Court upheld the admission of a quantity of marijuana

found in the unlocked glove compartment of defendant's automobile during a routine inventory search. As stated in *Opperman,* the police have three distinct needs in performing an inventory search of an impounded vehicle: the protection of the owner's property while it remains in police custody, the protection of police against claims or disputes over lost or stolen property, and the protection of the police from potential danger. 428 U.S. at 369; *Reese* v. *Commonwealth,* 220 Va. 1035, 1039, 265 S.E.2d 746, 749 (1980). Perhaps it was unlikely, given the facts of this case, that the police were in any danger because of items contained within Hamby's briefcase. Still, the police had a strong interest in preserving any valuables or other important personal property while Hamby's automobile was impounded.

We are not convinced, as Hamby argues, that law enforcement officers can protect an owner's property and themselves from claims over lost or stolen property by simply sealing and removing personal luggage as a whole. Without a record of the contents of such luggage, police are bereft of any means to verify what property was actually present at the time of its taking. Further, if the basis behind the inventory search is to protect any valuables which might be present, it is illogical to prohibit law enforcement officials from searching those areas wherein valuables are more likely to be kept. *In re One 1965 Econoline, etc.,* 109 Ariz. 433, 436, 511 P.2d 168, 171 (1973). A number of courts have adopted this view. *See United States* v. *McCambridge,* 551 F.2d 865, 870-71 (1st Cir. 1977); *United States* v. *Davis,* 496 F.2d 1026, 1031-32 (5th Cir. 1974); *State* v. *Walker,* 119 Ariz. 121, 579 P.2d 1091 (1978); *State* v. *Floyd,* 120 Ariz. 358, 586 P.2d 203 (Ariz. App. 1978); *State* v. *Undorf,* 210 Kan. 1, 499 P.2d 1105 (1972); *Mackall* v. *State,* 7 Md.App. 246, 255 A.2d 98 (1969)(automobile not owned by defendant); *State* v. *Vigil,* 86 N.M. 388, 524 P.2d 1004 (1974); *People* v. *Sullivan,* 29 N.Y.2d 69, 272 N.E.2d 464, 323 N.Y.S.2d 945 (1971). Still others have ruled exactly opposite. *See United States* v. *Schleis,* 582 F.2d 1166 (8th Cir. 1978); *State* v. *Prober,* 98 Wis.2d 345, 297 N.W.2d 1 (1980).* Indeed, the opening of an unlocked briefcase to inventory its contents is somewhat similar to the opening of the unlocked glove compartment for the

---

* *See also United States* v. *Benson,* 631 F.2d 1336 (8th Cir. 1980). *Cf. United States* v. *Bloomfield,* 594 F.2d 1200 (8th Cir. 1979).

same purpose as occurred in *Opperman, supra.* The expectation of privacy was approximately the same for each.

Our recent decision in *Abell* v. *Commonwealth,* 221 Va. 607, 272 S.E.2d 204 (1980), specifically declared invalid the search of a *locked* briefcase seized from the locked trunk of the defendants' automobile; but there, unlike the instant case, we were concerned with a search incident to an arrest and not an inventory search of an automobile.

We therefore uphold the search of Hamby's briefcase as the result of a lawful inventory of its contents, and the decision appealed from will be

*Affirmed.*