**The STATE of North Dakota, Plaintiff and Appellant,**

v.

**Ralph H. GELVIN, Defendant and Appellee.**

**Cr. No. 793.**

Supreme Court of North Dakota.

April 21, 1982.

Gail Hagerty, Asst. State's Atty., Bismarck, for plaintiff and appellant.

Robert J. Snyder, Bismarck, for defendant and appellee.

PAULSON, Justice.

⬛ The State appeals from a memorandum opinion of the District Court of Burleigh County dated August 11, 1981, which suppressed certain evidence.[1] We reverse.

---

1. We note that the State has appealed from the district court's memorandum opinion. Although the parties to this action did not raise the issue of the appealability of a memorandum opinion, it is the duty of this court to dismiss the appeal on our own motion if we conclude that it is not appealable. *Chas. F. Ellis Agency, Inc. v. Berg*, 214 N.W.2d 507, 509 (N.D.1974).

During the early evening hours of April 2, 1981, Officer Cliff Emmert of the Bismarck Police Department was dispatched to investigate an incident at the apartment of Mrs. Shirley Hart in south Bismarck. Upon arriving at the apartment, Officer Emmert found Mrs. Hart on the floor in the hallway of her apartment in a semiconscious condition. He also observed the defendant, Ralph H. Gelvin, lying unconscious on the floor in the kitchen of the apartment. Mrs. Hart told Officer Emmert that Gelvin had come to her apartment uninvited and had been acting very strangely. Mrs. Hart further stated that Gelvin claimed to be on drugs and had waved in the air a small piece of paper, claiming that it was LSD [lysergic acid diethylamide]. Gelvin had refused to leave and Mrs. Hart attempted to telephone the police, but Gelvin assaulted her and tore her telephone off the wall.

Officer Emmert took Gelvin into custody and transported him to the Burleigh County Jail for detoxification. At the jail, Gelvin's belongings were taken from him and an inventory conducted. During this inventory of Gelvin's belongings, Officer Emmert opened Gelvin's wallet. Lying loose between the folds of the wallet was a small piece of paper with a cartoon design on it. Officer Emmert, believing the paper to be "blotter acid", or LSD, sealed it in an envelope and placed it in an evidence locker. Subsequent testing at the Crime Laboratory Division of the State Laboratories Department indicated that the paper did indeed contain LSD.

On April 27, 1981, Gelvin was charged with possession of a controlled substance.

We have previously held in civil cases that a memorandum decision is generally not appealable. *Chas. F. Ellis Agency, Inc. v. Berg, supra* 214 N.W.2d at 510; *Nord v. Koppang,* 131 N.W.2d 617, 618 (N.D.1964); *Karabensh v. Grant,* 73 N.W.2d 782, 783 (N.D.1955). However, when the memorandum opinion contains an order which was intended to be a final order and the order is one from which an appeal may be taken pursuant to statute, we will treat the appeal as an appeal from the order. *Bond v. Busch,* 313 N.W.2d 704, 705 n.2 (N.D.1981); *Hospital Services, Inc. v. Dumas,* 297 N.W.2d 320, 320–321 n.1 (N.D.1980).

Gelvin filed a motion to suppress the evidence of LSD which was discovered during the inventory of his belongings at the Burleigh County Jail, and the district court granted Gelvin's motion to suppress in a memorandum opinion dated August 11, 1981.

■ The sole issue raised on this appeal is whether or not the district court erred in suppressing evidence seized from the defendant's wallet during an inventory conducted when the defendant was taken into custody for detoxification.

Initially, we note that Gelvin was brought to the Burleigh County Jail for detoxification; he had not been placed under arrest at the time his possessions were inventoried at the jail. Therefore, the search in this case cannot be justified as a search incident to an arrest.

The State contends that the examination of the contents of Gelvin's wallet was a routine inventory search conducted pursuant to standard jail procedure. In *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the United States Supreme Court upheld a routine inventory search of an impounded automobile. Various other courts have extended the rationale of *Opperman* to routine inventory searches of the articles possessed by a person lawfully taken into custody. *See, e.g., United States v. Bloomfield,* 594 F.2d 1200, 1201–1202 (8th Cir. 1979); *Sumlin v. State,* 266 Ark. 709, 587 S.W.2d 571, 577 (1979); *Dearing v. State,* 393 N.E.2d 167, 171 (Ind.1979). As noted by the Supreme Court of Indiana in *Dearing v. State, supra* 393 N.E.2d at 171:

We believe the same standard should apply in criminal cases. We stated in *State v. Jelliff,* 251 N.W.2d 1, 4 (N.D.1977), that "statutes conferring the right to appeal must be liberally construed, and that in determining appealability it is not the label which controls but, rather, the effect". Although in the instant case the district court issued a memorandum opinion granting the defendant's motion to suppress evidence, it is clear from the circumstances that the court intended the memorandum opinion to have the effect of a final order. Under these circumstances, we will treat the appeal as an appeal from the order contained in the memorandum opinion.

"Our analysis of this issue begins with the case of *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000. The issue there before the United States Supreme Court was the propriety of an inventory of an automobile; however, an examination of Justice Burger's majority opinion reveals general guidelines to determine the constitutionality of any type of inventory. The Court, in finding a distinction between searches pursuant to criminal investigations and 'noncriminal' inventories, noted that the making of inventories is not governed by the 'probable cause' concept, nor is a warrant required. Rather, the test of the constitutionality of an inventory is whether, under all the circumstances, the intrusion was reasonable."

Three interests have been advanced in support of inventory searches: (1) protection of the detainee's property while it remains in police custody; (2) protection of the police against claims and disputes over lost or stolen property; (3) protection of the police from danger. *South Dakota v. Opperman, supra* 428 U.S. at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005. Although courts have generally recognized that those interests require that a detainee's possessions be removed from him and inventoried when he is taken into custody, these courts have expressed widely divergent views regarding the proper scope of the inventory process. Cases involving the inventorying of the contents of closed containers have proved especially difficult.

Some courts faced with this issue have held that a closed or locked container should be inventoried as a unit without searching its contents, while other courts have held that the contents of closed or locked containers must be inventoried to protect the three interests delineated above. Courts have generally employed a balancing test, weighing the detainee's right to privacy in the contents of the container against the State's interest in protecting the three interests listed above: protection of the detainee's property, protection of officers from frivolous claims, and protection of officers from danger.

We note that most of the "closed container inventory search" cases have involved luggage, briefcases, and purses.[2] Although we express no opinion as to the propriety of conducting inventory searches of closed or locked containers in general, we hold that it was proper for the officers in this case to inventory the contents of Gelvin's wallet.

We have discovered numerous cases in which courts have held that it is permissible to inventory the contents of a detainee's wallet when done pursuant to established police procedures. *United States v. Matthews,* 615 F.2d 1279, 1286 (10th Cir. 1980); *United States v. Gallop,* 606 F.2d 836, 839 (9th Cir. 1979); *United States v. Jenkins,* 496 F.2d 57, 73 (2d Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975); *United States v. Gardner,* 480 F.2d 929, 931 (10th Cir.), *cert. denied,* 414 U.S. 977, 94 S.Ct. 297, 38 L.Ed.2d 220 (1973); *State v. Mordeszewski,* 68 Wis.2d 649, 229 N.W.2d 642, 647–649 (1975). Gelvin has failed to cite any case which holds that an inventory of the contents of a detainee's wallet is constitutionally impermissible.[3]

---

**2.** *See, e.g., United States v. Monclavo-Cruz,* 662 F.2d 1285 (9th Cir. 1981) [purse]; *United States v. Bloomfield,* 594 F.2d 1200 (8th Cir. 1979) [knapsack]; *United States v. Schleis,* 582 F.2d 1166 (8th Cir. 1978) [locked briefcase]; *Sumlin v. State,* 266 Ark. 709, 587 S.W.2d 571 (1979) [purse]; *Parris v. State,* 270 Ark. 269, 604 S.W.2d 582 (Ct.App.1980) [purse]; *Delatte v. State,* 384 So.2d 245 (Fla.App.1980) [travel bag]; *Dearing v. State,* 393 N.E.2d 167 (Ind. 1979) [suitcase]; *Bradford v. State,* 401 N.E.2d 77 (Ind.App.1980) [purse]; *People v. Miller,* 312 N.W.2d 225 (Mich.App.1981) [briefcase]; *People v. Merchant,* 86 Mich.App. 355, 272 N.W.2d 656 (1978) [briefcase]; *State v. Prober,* 98

Wis.2d 345, 297 N.W.2d 1 (1980) [purse]; *State v. McDougal,* 68 Wis.2d 399, 228 N.W.2d 671 (1975) [locked suitcases].

**3.** We note that the case most heavily relied upon by Gelvin in his brief, and the only case cited by the district court to support its conclusion on this issue, is *Reeves v. State,* 599 P.2d 727 (Alaska 1979), a case involving a search of the contents of a balloon found on the defendant's person when he was being booked into jail. A careful reading of *Reeves, supra,* however, reveals that the case was decided entirely upon state constitutional grounds. The court specifically noted that "It is not at all certain

Gelvin argues that the State's interests could have been served equally well in this case if his wallet had merely been taped shut, without inventorying its contents, and listed on the inventory as "one wallet and contents". We do not agree. In order to fully protect the State's interest in shielding its officers from frivolous claims or disputes over lost or stolen property, and to fully protect the detainee's property while it remains in police custody, it was necessary to inventory the contents of the wallet. As noted by the Court of Appeals of Michigan in *People v. Walker*, 58 Mich.App. 519, 228 N.W.2d 443, 446 (1975): "It would be naive and pointless to assume that law enforcement officials may store an arrestee's personal effects without first determining what it is they are inventorying." We also agree with the language of Justice Hansen of the Supreme Court of Wisconsin in his dissent in *State v. McDougal*, 68 Wis.2d 399, 228 N.W.2d 671, 679 (1975):

"For the court-specified purpose of protecting against future claims of impounded property being missing, such inventorying goes to contents, as well as container. To list, '1 purse' or '1 pocketbook' would provide no protection at all to the police against a claim that $100 or $1,000 was later missing from purse or pocketbook."

We also note that the United States Court of Appeals for the Eighth Circuit, which had previously held that it was impermissible to inventory the contents of a locked briefcase in *United States v. Schleis*, 582 F.2d 1166, 1172–1173 (8th Cir. 1978), has since somewhat limited its holding in that case. In *United States v. Bloomfield*, 594 F.2d 1200, 1203 (8th Cir. 1979), the court held that an inventory of the defendant's knapsack was impermissible, but indicated that its holding did not apply to situations where the container was not "securely closed":

"In conclusion, we note that our holding that the knapsack should have been inventoried as a unit rather than opened and itemized is confined to the facts before us. If a container which is to be inventoried is not securely closed so that the articles within could possibly fall out, it may be wiser for police to itemize the articles. *See United States v. Neumann*, 585 F.2d 355 (8th Cir. 1978). And, if police have some reason to believe a container which is to be inventoried holds instrumentalities which could be dangerous even when sitting idly in the police locker, the police may, and should, inventory the contents of the container."

A wallet is a container which generally is not securely closed, so that articles within could possibly fall out; therefore, it is wiser for police to itemize the contents of a wallet when conducting a routine inventory search.

■ We further conclude that a different result is not required merely because Gelvin was taken into custody for detoxification and had not been arrested at the time his possessions were inventoried. Inventory searches have been upheld, not because of their relationship to an arrest, but because of their relationship to legitimate jail custodial purposes. As noted by the United

---

that the fourth amendment to the United States Constitution, as presently construed, places any significant limitations on the scope of an inventory search conducted pursuant to a custodial arrest". *Id.* at 734. The court went on to note that it was therefore considering the scope of the inventory within the framework of its broader state constitutional guarantees, in *Reeves, supra* 599 P.2d at 734–735:

"As we have frequently noted, the Alaska constitutional guarantee against unreasonable searches and seizures is broader in scope than fourth amendment guarantees under the United States Constitution, at least in part because of the more extensive right of

privacy guaranteed Alaskan citizens by article I, section 22 of our state constitution. Thus, it is within the framework of Alaska's constitutional guarantees that we must analyze and delineate the permissible scope of pre-incarceration inventory searches in order to determine the validity of the search of Reeves' person undertaken at the Anchorage jail following his arrest."

Article I, section 22 of the Constitution of Alaska provides:

"*Section 22. Right of Privacy.* The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section."

States Court of Appeals for the Ninth Circuit in *United States v. Gallop, supra* 606 F.2d at 839:

"The next question in the case at bar, and one not without difficulty, is whether the reason for the officers' taking Connors into custody should alter this federal constitutional analysis. Wash.Rev. Code Ann. § 70.96A.120(2) specifies that persons taken into protective custody thereunder are not arrested, and are not charged with crime. We find no substantial basis for holding that the reasons for a police inventory which were outlined in *South Dakota v. Opperman, supra,* do not apply to property taken under police protection when the owner of the property is 'detained' under police custody but not 'arrested'. Under Fourth Amendment standards, the inventory in this case was reasonable; the articles discovered thereby were not tainted with federal illegality."

We conclude that the policy considerations which justify routine jailhouse inventory searches of arrestees are equally applicable when a person is brought into the jail for detoxification.

Gelvin also contends that the search in this case was not an inventory search at all, but, rather, was a "pretext" search conducted to discover evidence of a crime. · Although Officer Emmert had a suspicion that Gelvin was in possession of drugs, this certainly did not mean that he could not inventory Gelvin's possessions prior to placing him in jail for detoxification. Gelvin does not argue that it was improper for Officer Emmert to bring him to the jail for detoxification. The evidence overwhelmingly indicates that Gelvin was extremely intoxicated, that he had been unconscious for a time, and that he had acted in a violent manner. Under these circumstances, Officer Emmert was certainly justified in concluding that Gelvin should be taken to jail for detoxification.

■ There is also ample evidence indicating that the inventory search of Gelvin's possessions was conducted pursuant to standard jailhouse procedures. Keene Just, a Burleigh County Deputy Sheriff assigned to the Burleigh County Jail, testified that it was standard procedure to inventory the possessions of persons brought into the jail for detoxification, including the contents of wallets. We conclude that mere suspicion that contraband or evidence will be found will not invalidate an otherwise valid inventory search conducted pursuant to standard jailhouse procedure. *United States v. Ducker,* 491 F.2d 1190, 1192 (5th Cir. 1974); *Mooney v. State,* 243 Ga. 373, 254 S.E.2d 337, 344, *cert. denied,* 444 U.S. 886, 100 S.Ct. 179, 62 L.Ed.2d 116 (1979).

Finally, Gelvin contends that, even if the inventory search of his wallet were permissible, the seizure of the piece of paper and subsequent chemical testing was impermissible. The basis for Gelvin's argument is his contention that an officer who discovers a small piece of paper with a picture of the cartoon character "Goofy" on it is not justified in believing that the paper contains a controlled substance. Gelvin specifically points to Officer Emmert's testimony that a chemical test was necessary to determine whether or not the paper actually contained a controlled substance.

■ We do not believe that it is necessary for an officer to be certain beyond a doubt that a substance is contraband before he may seize it and submit it for testing. The seizure of property by an officer who lawfully views it is permissible if there is "probable cause to associate the property with criminal activity". *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 651 (1980).

■ The facts in this case clearly establish that Officer Emmert had probable cause to believe that the paper found in Gelvin's wallet contained a controlled substance. Officer Emmert had previously been informed by Mrs. Hart that Gelvin had shown her a small piece of paper which Gelvin claimed contained LSD. Officer Emmert also testified that he had been shown similar pieces of paper with the same design at a drug seminar, and had been informed that they contained "blotter acid",

or LSD.[4]   Under these circumstances, we believe that Officer Emmert had probable cause to believe that the piece of paper found in Gelvin's wallet contained a controlled substance.   Officer Emmert was therefore justified in seizing the paper and submitting it for chemical testing.

The order of the District Court of Burleigh County suppressing evidence removed from Gelvin's wallet at the Burleigh County Jail is reversed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.

---

4.  Officer Emmert testified, in relevant part, as follows:

"Q. What did you do then with the small square of paper?

"A. I sealed it up in an envelope and turned it in for evidence.

"Q. Had you ever seen anything similar to that piece of paper during the course of your training or experience as a law enforcement officer?

"A. Yes, I have.  In training, in a drug seminar, I was shown similar pieces of paper with the same design on it.

"Q. What were you told those were?

"A. That they were blotter acid—LSD."