Strafford
No. 81-398

## THE STATE OF NEW HAMPSHIRE

v.

## JOSEPH TOTO

August 31, 1983

*Gregory H. Smith,* attorney general (*Peter W. Mosseau* and *Brian T. Tucker,* assistant attorneys general, on the brief, and *Mr. Tucker* orally), for the State.

*Craig F. Evans,* of Durham, by brief and orally, for the defendant.

KING, C.J. The defendant appeals his conviction for unauthorized possession of a narcotic drug, RSA 318-B:2, I, :26 (Supp. 1981). We affirm the defendant's conviction, vacate the sentence imposed, and remand.

On the morning of April 2, 1981, the defendant, Joseph Toto, took a cab to the Kwiki-Cab Station in Dover and attempted to purchase a bus ticket to Concord, New Hampshire. Soon after the defendant's arrival at the cab station, the manager of the cab company called the Dover Police Department and reported that the defendant was acting suspiciously. At about nine in the morning, a Dover police officer responded to the call and, when he arrived, found the defendant seated in the waiting area with a large green garbage bag in front of him. The defendant was able to produce identification upon request.

The officer testified at a hearing on the defendant's motion to suppress that the defendant appeared to be highly intoxicated, there was an "odor" of alcohol emanating from his breath, his eyes were glassy, and his face was "expressionless." The officer stated that the defendant looked like a man who "had been on a bender." His speech "was slurred and mush-mouthed so it almost sounded like he was talking with marbles in his mouth and couldn't get the words out."

In addition, the defendant was unable to walk without assistance. When he attempted to walk a distance of about five feet, he "stumbled right forward and had to grab ahold of [a] post to support himself. . . ."

The manager of the bus station would not sell the defendant a bus ticket or permit him to stay at the station. The police officer testified that he feared the defendant would pass out if he were permitted to leave. As a result, the officer decided to take the defendant into protective custody for the purpose of lodging him at the police station until he was sober. The officer conducted a frisk search of the defendant at the cab station, handcuffed him, and transported him with his garbage bag to the Dover Police Station.

At the police station, the defendant was given dry clothing, and his own clothing, which was wet, was hung up to dry. The officer then began an inventory search of the defendant's belongings, including the garbage bag. In the bag, the officer found 75 to 100 bottles of prescription drugs, as well as watches and jewelry. The defendant was charged with unauthorized possession of a narcotic drug.

The officer testified that when he checked on the defendant shortly after placing him in a cell, the defendant appeared to be dead. The defendant was rushed to the Wentworth-Douglas Hospital, where the doctors pumped his stomach, not knowing what, if anything, he might have ingested.

Prior to trial, the defendant moved to suppress the evidence found in the garbage bag on the ground that the search had been illegal. The Superior Court (*Goode,* J.) upheld the search as a valid inventory search, and therefore denied the motion. A trial by jury resulted in a verdict of guilty on the charge. At sentencing, the court imposed an extended term of imprisonment pursuant to RSA 651:6 (Supp. 1981), even though no notice of the possible application of this provision had been given to the defendant prior to trial or prior to sentencing. The defendant appealed.

On appeal, the defendant raises four major arguments. First, he argues that the inventory search of his garbage bag violated RSA 172-B:3, VII (Supp. 1981) and the due process clause of the United States Constitution. The defendant argues that RSA 172-B:3, VII (Supp. 1981) prohibits the search of a closed container because, while that section provides that the police may conduct a search of the "person" taken into protective custody to reduce the likelihood of injury, it does not expressly provide that the police may search *objects* in the possession of that person.

■ We reject this argument. Through RSA 172-B:3, VII (Supp. 1981), the legislature has expressed its concern that police be per-

mitted to conduct a search in order to reduce the likelihood of injury to themselves and others. The danger of injury arises not only from the *person* taken into protective custody but also from *objects* in his possession which may pose a threat of injury to persons even if the object is taken into police custody. We will not interpret this statutory provision so narrowly as to prevent the police from protecting themselves against this danger.

In *State v. Harlow*, 123 N.H. 547, 551–52, 465 A.2d 1210, 1213 (1983), we held that RSA 172-B:3, VII (Supp. 1981) limits the scope of a search that may be performed on a person taken into protective custody pursuant to RSA 172-B:3 (Supp. 1981). We indicated that a search could be performed either to obtain identification or to reduce the threat of injury to persons as a part of the standard procedure of the police station. Although it appears that a search was not necessary to obtain identification in this case, it was necessary to reduce the likelihood of injury. A large garbage bag could contain a number of objects which would pose such a threat of injury to persons, as for instance, a gun. We therefore hold that the search of the defendant's garbage bag did not violate the permissible scope of searches under RSA 172-B:3, VII (Supp. 1981).

Nor did the search violate the due process clause of the United States Constitution. The defendant claims that the fifth amendment establishes a right to be free from unreasonable searches, and therefore that the right to search persons under RSA chapter 172-B (Supp. 1981) must serve a compelling State interest and be narrowly drawn. It is clear that the right to be free from unreasonable searches is fundamental in the sense that it is applicable to the States through the due process clause of the fourteenth amendment. *Mapp v. Ohio*, 367 U.S. 643, 650–57 (1961). This right arises from and is defined by the fourth amendment, however, and not by the due process clause of the fifth amendment. It is clear that the inventory search of an arrested individual and his personal effects does not violate the fourth amendment. *Illinois v. Lafayette*, 103 S. Ct. 2605 (1983); *see State v. Levesque*, 123 N.H. 52, 455 A.2d 1045 (1983). Under fourth amendment analysis, moreover, we believe that the inventory search of the person and the property of one lodged in jail pursuant to RSA 172-B:3 (Supp. 1981) is permissible for the limited purposes identified in *Harlow*, even though the person has not been arrested. *See United States v. Gallop*, 606 F.2d 836, 839 (9th Cir. 1979).

The defendant's second argument is that the police failed to follow certain procedures required by RSA 172-B:3 (Supp. 1981) and that the inventory search of his garbage bag therefore was improper. He

argues that the officer taking him into custody was required to have probable cause to believe that the defendant's intoxication was due to alcohol, rather than to drugs, because RSA chapter 172-B concerns only intoxication and incapacitation due to alcohol.

■■ Even assuming, *arguendo*, that RSA 172-B:3, I (Supp. 1981) requires an officer to have probable cause to believe that a person is intoxicated due to alcohol in order to take that person into protective custody, this standard was satisfied in this case. The evidence introduced in this case indicated that there was an odor of alcohol on the defendant's breath, that his eyes were glassy, that his speech was slurred and that he was staggering in a drunken-like state. A police officer is not required to eliminate completely the possibility that the intoxication was, in fact, due to drugs, and not to alcohol.

■ The defendant also argues that the officer was required to have probable cause to believe that the defendant was "incapacitated," prior to lodging the defendant in jail. The police officer who took the defendant into protective custody testified that he believed the defendant was "intoxicated" when he took him into custody. The defendant's argument that the State failed to prove that the defendant was "incapacitated" is of no avail, because the defendant could be lodged in jail if the police officer believed that the defendant was "intoxicated," *see* RSA 172-B:3, I (Supp. 1981), and not "incapacitated." Once lodged in jail he could be subjected to an inventory search for the purposes identified in the statute.

■ The defendant further argues that the search was invalid because the police department failed to contact medical personnel as required by RSA 172-B:3, III (Supp. 1981). This argument assumes that the police officer believed that the defendant was "incapacitated," and not merely "intoxicated," *see* RSA 172-B:3, II, III (Supp. 1981). This is not supported by the record.

The defendant's third major argument is that a person who is "incapacitated" as defined in RSA 172-B:1, IX (Supp. 1981) cannot, as a matter of law, act "knowingly" for purposes of RSA 318-B:2, I, :26 (Supp. 1981). There is no indication in the record that the police officer considered the defendant to be "incapacitated," nor did the trial court make any such finding. We therefore need not address this issue.

■ The defendant's final argument is that the court erred in sentencing him in accordance with RSA 651:6 (Supp. 1981) because neither the State nor the court notified him at any time prior to actual sentencing that this section might be applied. RSA 651:6, II

(Supp. 1981) provides for the imposition of an extended term of imprisonment if the court makes certain required findings, and *"if notice of the possible application of this section is given the defendant prior to the commencement of trial."* (Emphasis added.) The State contends that this notice requirement applies only if the prosecutor requests the extended term of imprisonment. It argues that notice is not required if the judge decides *sua sponte* to apply the section. We are not persuaded by this argument. The requirement of notice in RSA 651:6, II (Supp. 1981) on its face is not limited to those instances in which the prosecutor seeks application of the statute.

▮▮▮▮▮▮▮▮ Because the legislature has not established any distinction based on the individual invoking the statute, and because application of the statute in both situations may result in a substantial increase in one's penalty, we believe that the notice requirement was intended to apply even when the judge seeks to apply the statute *sua sponte.* Pretrial notice will give the defendant an opportunity to offer evidence to refute the findings required by subsection one of the statute. Because notice was not given prior to the commencement of trial as required by RSA 651:6, II (Supp. 1981), the trial court erred in sentencing the defendant in accordance with this provision. Accordingly, we reverse and remand for resentencing pursuant to RSA 651:2.

> *Affirmed in part; reversed in part; and remanded.*

BOIS, J., dissented in part; the others concurred.

BOIS, J., dissenting in part: I concur in the result arrived at in reference to the search and dissent as to the application of the notice requirement of RSA 651:6, II (Supp. 1981). I would hold that the notice requirement applies to the prosecution only and not to the court. To hold otherwise, in my opinion, is an impermissible intrusion into the court's exercise of its discretion in sentencing.